# LOUISVILLE AND NASHVILLE RAILROAD COMPANY v. BEHLMER.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 46. Argued April 17, 18, 1899. — Decided January 8, 1900.

The conceded facts from which it has been assumed in this case, as a matter of law, that the railway carriers were operating "under a common control, management or arrangement for a continuous carriage or shipment" were as follows: The several carriers transported hay from Memphis under through bills of lading, by continuous carriage, to Summerville and Charleston. The several roads shared in an agreed rate on traffic to Charleston and in a precisely equal in amount rate on traffic to Summerville. On. shipments to Summerville, however, there was added to the Charleston rate the amount of the local rate from Charleston to Summerville, the benefit of which additional exaction was solely received by the local road on which Summerville was situated. The contention that under this state of facts the carriers did not constitute a continuous line, bringing them within the control of the Act to regulate Commerce, is no longer open to controversy in this court. In *Cincinnati, New Orleans & Texas Pacific Railway* v. *Interstate Commerce Commission*, 162 U. S. 184, which was decided after this case was before the Commission and the Circuit Court, it was held under a state of facts substantially similar to that here found that the carriers were thereby subject to the Act to regulate Commerce.

It is settled by previous decisions that the construction given in this cause by the Interstate Commerce Commission and the Circuit Court of Appeals to the fourth section of the Act to regulate Commerce was erroneous, and hence that both the Interstate Commerce Commission and the Circuit Court of Appeals mistakenly considered, as a matter of law, that competition, however material, arising from carriers who were subject to the Act to regulate Commerce could not be taken into consideration; and likewise that all competition, however substantial, not originating at the initial point of the traffic, was equally as a matter of law excluded from view.

What was decided in the previous cases was that under the fourth section of the act substantial competition which materially affected transportation and rates might under the statute be competent to produce dissimilarity of circumstances and conditions, to be taken into consideration by the carrier in charging a greater sum for a lesser than for a longer haul. The meaning of the law was not decided to be that one kind of competition could be considered and not another kind, but that all competition, provided it possessed the attributes of producing a substantial and mate-

rial effect upon traffic and rate making, was proper under the statute to be taken into consideration.

It follows that while the carrier may take into consideration the existence of competition as the producing cause of dissimilar circumstances and conditions, his right to do so is governed by the following principles: *First:* The absolute command of the statute that all rates shall be just and reasonable, and that no undue discrimination be brought about, though, in the nature of things, this latter consideration may in many cases be involved in the determination of whether competition was such as created a substantial dissimilarity of condition. *Second:* That the competition relied upon be, not artificial or merely conjectural, but material and substantial, thereby operating on the question of traffic and rate making, the right in every event to be only enjoyed with a due regard to the interest of the public, after giving full weight to the benefits to be conferred on the place from whence the traffic moved as well as those to be derived by the locality to which it is to be delivered.

This controversy was commenced on December 29, 1892, when Henry W. Behlmer, a resident of Summerville, South Carolina, and a wholesale hay and grain dealer therein, began proceedings, before the Interstate Commerce Commission, under the Act to regulate Commerce, passed February 4, 1887, as amended, to restrain the continuance of acts asserted by him to be a violation of the statute referred to. The petition was filed by Behlmer on his own behalf, and that of the other merchants, residents of Summerville, and the parties complained of were The Memphis and Charleston Railroad Company, The East Tennessee, Virginia and Georgia Railroad Company, The Georgia Railroad and Banking Company (the owner of a railroad designated as the Georgia Railroad), The South Carolina Railway Company, and other companies and individuals, who were averred to be lessees or receivers of some of the above-named companies. All the lines of railroad mentioned were asserted to be members of a combination styled The Southern Railway and Steamship Association.

It was averred that the defendants were carriers under a common control, management or arrangement, for continuous carriage, and were engaged in the transportation of passengers and property wholly by railroad, between Memphis in the State of Tennessee and Summerville in the State of South Carolina and through Summerville to Charleston. The distance be-

tween Memphis and Summerville was averred to be 748 miles, as follows: Between Memphis and Chattanooga, 310 miles over the Memphis and Charleston Railroad; between Chattanooga and Atlanta, Georgia, 152 miles over the East Tennessee, Virginia and Georgia Railroad; from Atlanta to Augusta, Georgia, 171 miles over the Georgia Railroad; and from Augusta, Georgia, to Summerville, South Carolina, 115 miles over the South Carolina Railway. The principal subject of complaint was that though Summerville was twenty-two miles west of Charleston and was that distance nearer to Memphis, where the hay and grain shipments originated, yet the defendants exacted from the petitioner and other merchants of Summerville a freight charge of twenty-eight cents per hundred pounds for hay, carried from Memphis to Summerville, while only nineteen cents per hundred pounds were charged for the same article when carried to Charleston, the longer distance. It was averred that the rate of twenty-eight cents to Summerville was made up of the through rate to Charleston, with the addition of the local rate from Charleston to Summerville of nine cents per hundred pounds. It was also alleged that the shipments of hay to Summerville were made over the same line, in the same direction as Charleston, and under substantially similar circumstances and conditions. The freight charges complained of were averred to be in violation of the fourth section of the Act to regulate Commerce, commonly referred to as the long and short haul clause. Besides, it was alleged that the local rate between Summerville and Charleston of nine cents per hundred pounds was excessive and unreasonable, and that such also was the case as regards the charge of twenty-eight cents from Memphis to Summerville, and hence such charges were in violation of the first section of the Act to regulate Commerce. It was also asserted that the discrimination and excessive rates against Summerville existed not only on hay, "but on all articles of interstate commerce coming to that place, much to the detriment and disadvantage of the town and the business of its merchants."

In their answers certain of the defendants conceded that they were subject to the Act to regulate Commerce, while

others, though admitting that they were common carriers and engaged in the transportation of passengers, wholly by railroad between points in the States of Tennessee and South Carolina, averred that they had no joint through tariff from Memphis to Summerville, and therefore had no "line" from Memphis to Summerville, in the sense of the Act to regulate Commerce, and were in consequence not affected by the statute. All the defendants averred that the aggregate freight rate on hay carried from Memphis to Summerville, as well as the local rates from Charleston to Summerville, were just and reasonable. By some of the defendants it was alleged that the transportation of hay from Memphis to Summerville was not done under substantially similar circumstances and conditions as the transportation of like property from Memphis to Charleston, and hence the carriers were justified in making a lesser charge to Charleston than was made to Summerville, the shorter distance. The dissimilarity alleged was asserted to have been caused, first, by the existence between Memphis and Charleston of at least eight competing lines of railroad, and, second, by the competition by sea, on hay and grain, and freight of that class, originating in Chicago, New York and Eastern points, and destined to Charleston via the lakes, canal and ocean, and by part water and part rail. The exact conditions of the competition existing at Charleston because of its situation on the seaboard and consequent relations with many markets other than Memphis, was stated in the joint and several answers of the Louisville and Nashville Railroad Company and the Central Railroad and Banking Company as follows:

"(Second.) Charleston is a port on the Atlantic coast, accessible and easily reached from the ports of Baltimore, Philadelphia, New York, Boston and other Eastern ports from which hay is shipped by water. If the rail lines from Memphis to Charleston charged rates to Charleston as high as the rate to Summerville, although the latter rate is in itself reasonable, no hay would be brought from Memphis to Charleston, but Charleston would be supplied with hay from North Atlantic ports and the railroads would lose the hay business and Memphis would lose a hay market.

" (Third.) The rates on Western produce to Charleston and other coast cities, such as Savannah, Port Royal and Brunswick, are made with a view to actual, existing water competition. Western produce, such as grain, hay, etc., distributed from Chicago, can reach Charleston through the ports of New York, Philadelphia and Baltimore over continuous water routes via the lakes and canal or over combined rail and water routes.

" The all-rail lines, seeking to do business between Chicago and Charleston and other coast cities, are compelled to make their rates approximate those which are offered by the continuous water route or by the combined rail and water routes. The all-rail routes make their rates as much higher as the difference in the service will permit, and those rates are correspondingly adjusted from all Western points, such as Evansville, Cairo, St. Louis, Memphis, etc. At present the all-rail rate from Chicago to Charleston on hay, for instance, is 33 c. per 100 lbs.; from St. Louis, 28 c.; from Louisville, Evansville and Cairo, 23 c.; and from Memphis, 19 c. — the route through Memphis offering facilities for the transportation of hay, grain and Western products generally from the States of Missouri, Kansas, Nebraska, etc.

" The rate from Memphis to Charleston on hay is, therefore, forced upon the defendant lines by actual existing water competition and other competition beyond the control of defendant.

" The controlling element in said competition is the lake, canal and ocean transportation between Chicago and Charleston; or the lake transportation from Chicago to Buffalo, or other lake port, thence by rail to New York, thence by ocean to Charleston; or rail transportation from Chicago to Baltimore, Philadelphia or New York, thence by ocean to Charleston."

On the foregoing issues testimony was taken before the Commission, which entered an order requiring the defendants to desist on or before a date named from charging any greater sum in the aggregate for the transportation from Memphis to Summerville of hay, or other commodities carried by them,

under circumstances and conditions similar to those appearing in the case, than was being charged for such transportation for the longer distance to Charleston.   This order, however, stated that it was made without prejudice to the right of the defendants to apply to the Commission for relief under the fourth section of the Act to regulate Commerce.   The order not having been obeyed, Behlmer, as authorized by section 5 of the act of March 2, 1889, c. 382, 25 Stat. 855, 859, amending section 16 of the original act, filed his complaint in the Circuit Court of the United States for the Fourth Circuit, Eastern District of South Carolina, against the defendants in the proceedings before the Commission and the purchasers, assignees and successors of some of them, praying that the court might enforce compliance with the order of the Commission.   By stipulation the testimony taken before the Commission was used at the hearing in the Circuit Court, and by consent certain documentary evidence (consisting of railway agreements, tariffs, reports, etc.) was filed as additional evidence on behalf of the defendants.

The case was heard by the Circuit Court, and, on January 22, 1896, the bill was ordered to be dismissed.   71 Fed. Rep. 835.   The controversy was then taken by appeal to the Circuit Court of Appeals for the Fourth Circuit, and that court reversed the judgment of the Circuit Court, and remanded the cause with instructions to render a decree substantially in accordance with the order made by the Commission.   42. U. S. App. 581.   A motion for a rehearing having been denied, the case was then brought to this court.

*Mr. Edward Baxter* for appellants.

*Mr. Claudian B. Northrop* for appellee.

MR. JUSTICE WHITE, after making the foregoing statement, delivered the opinion of the court.

The questions which arise on this record involve the consideration of several provisions of the act of February 4, 1887, c. 104, to regulate Commerce.   24 Stat. 379.

The particular questions at issue and the aspect in which they arise will be best shown by first considering the action of the Commission, then that of the Circuit Court in reviewing the order of that body, and, thirdly, that of the Circuit Court of Appeals in reversing the decree of the Circuit Court. The Commission held, as a matter of fact, that the carriers so conducted their business as to constitute a through line within the meaning of the Commerce Act, and were therefore amenable to its provisions. It did not, however, consider whether the rates to Summerville and Charleston were just and reasonable, because it deemed it unnecessary to do so. The reason for this conclusion was stated as follows:

"If it shall appear in this case that the defendants violate the long and short haul clause of the law by keeping the higher rate to Summerville in force, it will be unnecessary to consider in this report whether the rate to Summerville is in violation of other provisions of the law. In that event the prohibition of the fourth section will afford all the reduction demanded in the complaint."

When it approached the fourth section of the act, the Commission declined to weigh the evidence before it as to the existence of competition, except in so far as to enable it to determine that the evidence established that the competition relied upon by the carriers did not originate at the point of shipment, or if it did arise at such place it was alone engendered by the presence there of other carriers who were subject to the Commerce Law.

This determination of the Commission to restrict its examination of the evidence solely to the extent necessary to enable it to ascertain the source and inherent character and not the materiality and substantiality of the competition, and therefore to exclude wholly from view the latter considerations, was predicated on the conclusion that, as a matter of law, no competition, however great might be its influence on carriage and rate making, could be by the carrier taken into consideration, of his own motion, in determining whether a lesser sum would be charged for the longer than for the shorter haul, if such competition arose from the sources or was wholly of

the character which it was found by the Commission the proof established the competition relied on to be. That is to say, the Commission concluded, as a matter of law, that it was unnecessary to weigh the facts for the purpose of determining the materiality and extent of the competition, because, however strongly the proof might demonstrate its potency upon traffic and rates, nevertheless it would be without efficacy to give rise to such substantial dissimilarity as would justify the carrier, of his own motion, to charge a lesser rate for the longer than for the shorter haul. Whilst this was held to be the law, at the same time it was decided that the character of competition, which from its very nature was decided to be inadequate to create such legal dissimilarity in the conditions as to justify the carrier, of his own motion, charging a lesser sum for the longer than that for the shorter haul, nevertheless might authorize the Commission to sanction the lesser charge if the facts were presented to the Commission and its previous sanction to making such charge was obtained. Therefore the right of the carrier to prefer to the Commission a request for authority to make the charge complained of, predicated upon the very grounds which were held insufficient to permit the carrier to do so, on his own motion, was fully reserved. The ruling was, then, this, that some kinds of competition, however material and substantial in their operation, were yet inadequate, for the purpose of creating dissimilarity in circumstance and condition, to justify the independent action of the carrier, although the identical conditions of competition might be sufficient to produce such dissimilarity as to justify the Commission, on application made to it for such purpose, to authorize the carrier to charge less for a longer than was exacted for a shorter distance. The Commission said in its report (4 Inters. Com. Rep. 520, 523):

"There is no showing in this proceeding of competition by lines not subject to the Act to regulate Commerce for the carriage of hay from Memphis to Charleston, and the fact that there may be competition for such traffic by lines which are subject to the act, or that hay may be carried to Charleston by various rail and water, or part rail and part water, routes

from points other than Memphis, does not justify the defendant carriers in departing from the general rule of the fourth
section upon their own motion.   Such considerations may constitute reasons for applying to the Commission for relief under
the proviso clause of that section, but for reasons stated in our
decisions of the cases above cited they do not justify carriers
in departing from the rule of the fourth section without such
a relieving order.   Water competition, to justify lower long-
haul rates, must exist between the point of shipment and the
longer distance point of destination.   (*James & M. Buggy Co.
v. Cincinnati, N. O. & T. P. R. R. Co., supra.*)   One transportation line cannot be said to meet the competition of another
transportation line for the carrying trade of any particular
locality, unless the latter line could and would perform the
service alone if the former did not undertake it.   (*Chattanooga
Board of Trade v. East Tennessee, V. & G. R. Co., supra.*)
The competition of markets, or the competition of carrying
lines, subject to regulation under the Act to regulate Commerce does not justify carriers in making greater short-haul
or lower long-haul charges over the same line without an order
issued by the Commission on application therefor and after
investigation.   (*Ga. R. R. Com. v. Clyde S. S. Co.*, 4 Inters.
Com. Rep. 120 ; 5 I. C. C. Rep. 324 ; and *Gerke Brew. Co.* v.
*Louisville & N. R. Co.*, 4 Inters. Com. Rep. 267 ; 5 I. C. C.
Rep. 596.) "

The Circuit Court held that one of the defendants had not
been served with process so as to cause any decree which.
might be rendered to be conclusive, and, moreover, decided
that the proof did not establish that the carriers, in the matter complained of, were under a common control and management for continuous shipment, within the meaning of the act,
and, therefore, they were not, as to such carriage, amenable
to the provisions of the act.   The court, however, proceeded
as follows (71 Fed. Rep. 839) :

"But if we assume, for the sake of argument, that all the
defendants are affected by this charge, does it violate the fourth
section of the act above quoted?   Judge Cooley, in *In re L.
& N. R. R. Co.*, 1 Inters. Com. Rep. 57, says : ' The charg-

ing or receiving greater compensation for the shorter than for the longer haul is sure [seen] to be forbidden only where both are under substantially the same circumstances and conditions. And, therefore, if in any case the carrier, without first obtaining an order of relief, shall depart from the general rule, its so doing will not alone convict it of illegality, since if the circumstances and conditions of the two hauls are dissimilar the statute is not violated.' This is quoted with approbation by the United States Circuit Court, Southern District California. (*Interstate Commerce Commission* v. *A. T. & S. F. R. Co.*, 50 Fed. Rep. 295.)

"When, then, may the circumstances and conditions of the two hauls be said to be dissimilar? Judge Cooley, in the same case, answers this question: 'Among other things in cases where the circumstances and conditions of the traffic were affected by the element of competition, and where exceptions might be a necessity if the competition were to continue. And water competition was, beyond doubt, especially in view.'

"In the case from 50 Fed. Rep. above cited, this is one of the rubrics: 'Los Angeles, California, is a point to which there is active competition in certain kinds of freight between several transcontinental railway lines, direct or by water, via Vancouver and San Francisco; also, by ocean freights, via Aspinwall and the Straits of Magellan, from points east of the Missouri River. And a through rate on the same kind of freight, lower than to San Bernardino, an intermediate noncompetitive point, 60 miles from Los Angeles, on one of the competing railroad lines, is not prohibited by the act, since the circumstances and conditions were substantially dissimilar.'

"The circumstances of the case at bar are closely like those of the case just quoted. Charleston is a competitive point between all-railroad routes, routes partly by rail and partly by water, and routes all water. If the defendants had not consented with each other to lower the rate, no hay whatever would come from the hay-producing territory tributary to Memphis; and all the southeast Atlantic States would be compelled to rely on other portions of the West, North or Northeast for hay.

" The evidence clearly shows that the rate to Charleston was forced down by this competition. But this is an advantage to all the territory tributary to Charleston, and all stations share in it. No such competition exists at Summerville, a small inland town. If it, and others like it, were permitted to share in the circumstances and conditions surrounding Charleston and to get the benefit of the competition which Charleston enjoys, and they have not, then, *ex necessitate*, the South Carolina Railway will be called upon to elect between its through business and its local business, and in this election to give up the former. Thus, all stations on the line of road will pay local freight on hay, and the market, to the extent of imports from Memphis, will be destroyed. The interstate commerce law was intended to promote trade. Such a construction as is now sought would destroy competition, the life of trade."

Subsequently the attention of the Circuit Court was called to the asserted fact that there had been a service on the defendant, as to whom it was stated, in the opinion of the court, there had been no service of process. In a memorandum opinion the court in substance said that, conceding *arguendo* the correctness of the fact called to its attention, as it would not change the result of the decision, it was unnecessary to further consider it.

The Circuit Court of Appeals decided that the Circuit Court had mistakenly held that one of the parties essential to the cause had not been properly served, and that the Circuit Court had also fallen into error in deciding that the carriers in question were not, within the intendment of the Commerce Act, a continuous line for through transportation under a common management and control. When it came to consider the conflicting conclusions of the Commission and the Circuit Court as to the meaning of the fourth section of the act, the court held that the interpretation adopted by the Commission was right, and that upheld by the Circuit Court was wrong. In other words, the Circuit Court of Appeals decided that no competition existing at the place of delivery, however far reaching, or arising at the initial point from the action of other

carriers who were subject to the control of the act, could justify a carrier in making a greater charge for a shorter than for a longer haul, although such competitive conditions might empower the Commission, on application of the carrier to grant the right to make such charge. The reasons which impelled the Circuit Court of Appeals to the conclusion by it reached are very clearly stated in its opinion, from which a member of the court (Morris, District Judge) dissented. The court said (42 U. S. App. 594):

" The decisions of the Interstate Commerce Commission, concerning the proper construction of section 4 of the Interstate Commerce Act, have not been uniformly sustained by the decrees of the courts of the United States in cases instituted for the purpose of enforcing the orders of the Commission concerning that section, and, therefore, prior to the announcement of the opinion of the Supreme Court in the *Social Circle case* there was much confusion concerning the true meaning of the same. A careful reading of that opinion impels us to the conclusion that the construction given that section by the Interstate Commerce Commission, in a number of cases decided by it prior to such decision, is the proper one. In this connection may be cited the following: *The James & Mayer Buggy Co.* v. *The Cin., N. O. & Tex. Pac. R. Co.*, 3 Inters. Com. Rep. 682; *Trammel* v. *Clyde S. S. Co.*, 4 Inters. Com. Rep. 120; *The Board of Trade of Chattanooga* v. *East Tenn., V. & G. R. Co.*, 4 Inters. Com. Rep. 213."

Again :

" We adopt the conclusion heretofore announced by the Interstate Commerce Commission (4 Inters. Com. Rep. 520), which is, in substance, that in order to justify the greater charge for the shorter distance because of water competition, the transportation as to which such competition exists must be concerning freight to the longer distance point, which, if not carried to such point by the road giving the rate complained of, could reach that point by water transportation; and also that the competition of one transportation line cannot be said to meet that of another for the carriage of traffic

from any particular locality, unless one line could perform the service if the other did not. Such, we believe, to be the true meaning of section 4, so far as the point we are now considering is involved. We are also of opinion that the competition claimed by the appellees to exist between the different markets — particularly those of Memphis, Chicago and the North Atlantic ports — to supply the trade of Charleston in the products mentioned, is not in reality the competition that affects rates from a particular locality, but is one that is regulated by the commercial circumstances existing at those points, applicable to business of that character and not connected with the usual conditions under which transportation is conducted, nor does such competition in our judgment create the dissimilar circumstances and conditions referred to in the fourth section of the act now under consideration. And we further hold that competition between carriers subject to the requirements of said act does not produce such substantial dissimilarity in the circumstances and conditions under which transportation is performed as will justify such carriers in making a greater charge for the shorter than for the longer haul, without an order to that effect from the Commission, granted by it as provided for in the proviso to the fourth section."

Approaching, then, a solution of the questions which arise from the report of the Commission and the decisions below rendered, which substantially also embrace the essential matters covered by the assignments of error and the material issues which were urged in the argument at bar, it appears that the propositions involved are threefold. First. Was it correctly decided that the carriers as the result of the arrangements between them constituted, within the purview of the first section of the Act to regulate Commerce, a continuous line, so far at least as regards the shipments between Memphis, Summerville and Charleston ? Second. Was it correctly held by the Commission and decided by the Circuit Court of Appeals, that under the fourth section of the act no competition, however material, unless it arose from certain enumerated sources or was of the inherent character stated by the

Commission and the Circuit Court of Appeals, could create such dissimilarity of circumstance and condition as would authorize the carrier, of his own motion, to charge a greater rate for a lesser than for a longer distance? The provisions of the fourth section which are involved in the second proposition are as follows:

"SEC. 4. That it shall be unlawful for any common carrier subject to the provisions of this act to charge or receive any greater compensation in the aggregate for the transportation of passengers or of like kind of property, under substantially similar circumstances and conditions, for a shorter than for a longer distance over the same line, in the same direction, the shorter being included within the longer distance; but this shall not be construed as authorizing any common carrier within the terms of this act to charge and receive as great compensation for a shorter as for a longer distance: provided, however, that upon application to the Commission appointed under the provisions of this act such common carrier may, in special cases, after investigation by the Commission, be authorized to charge less for longer than for shorter distances for the transportation of passengers or property; and the Commission may from time to time prescribe the extent to which such designated common carrier may be relieved from the operation of this section of this act."

Third. If it be concluded that the Commission and the Circuit Court of Appeals erroneously interpreted the fourth section of the act, is the record in such a condition as to justify this court in deciding, as a question of first impression, whether the through rates, complained of, were just and reasonable, and whether, if yes, the proof offered by the carrier established such substantial and material competition, as would support a charge by the carrier, on his own motion, of a lesser rate for the longer than is exacted for the shorter distance?

The first two of the foregoing questions in effect solely involve propositions of law, for, although the essential predicate upon which they rest takes into consideration certain facts, they were not disputed below, and their existence was

not denied in the argument at bar. They may be assumed, therefore, as being unchallenged for the purpose of the legal questions presented. We come, then, to the immediate consideration of the propositions above referred to in the order stated.

1st. The conceded facts from which it was deduced as a matter of law that the carriers were operating "under a common control, management or arrangement for a continuous carriage or shipment" were as follows: The several carriers transported hay from Memphis under through bills of lading, by continuous carriage, to Summerville and Charleston. The several roads shared in an agreed rate on traffic to Charleston and in a precisely equal in amount rate on traffic to Summerville. On shipments to Summerville, however, there was added to the Charleston rate the amount of the local rate from Charleston to Summerville, the benefit of which additional exaction was solely received by the local road on which Summerville was situated. The contention that under this state of facts the carriers did not constitute a continuous line, bringing them within the control of the Act to regulate Commerce, is no longer open to controversy in this court. In *Cin., N. O. & Texas Pacific Railway* v. *Interstate Commerce Commission*, 162 U. S. 184, decided since the case in hand was before the Commission and the Circuit Court, it was held under a state of facts substantially similar to that here found that the carriers were thereby subject to the Act to regulate Commerce.

2d. It is, as we have said, uncontroverted that all the competition relied on by the carriers, to establish that there was a dissimilarity of circumstance and condition, arose solely from two sources; either that originating at Memphis, the initial point of the traffic, from the presence there of carriers who were subject to the provisions of the Commerce Act, or competition based on the fact that Charleston was connected with or accessible to lines of rail and water communication which brought it in relation with many other places and markets other than Memphis, thereby creating competition between Memphis and Charleston, the claim being that Memphis would have been deprived of the benefits of the Charleston traffic, and Charles-

ton would be also cut off from the Memphis supply if the rates from Memphis to Charleston had not been made lower to meet the competition at Charleston.

The construction of the fourth section of the Act to regulate Commerce and the question whether competition which materially operated on traffic and rates was a proper subject to be considered by a carrier in charging a greater rate for the shorter than was asked for the longer distance, on account of the dissimilarity of circumstance and condition produced by such competition, has recently, after elaborate argument and great consideration, been passed upon by this court. In *Texas & Pacific Railway* v. *Interstate Commerce Commission*, 162 U. S. 197, the facts as stated by the court which are pertinent to the legal question now under consideration were briefly as follows (pp. 197–200): " The Interstate Commerce Commission entered an order directing the railway to forthwith cease and desist from carrying any article of imported traffic shipped from any foreign port through any port of entry of the United States, or any port of entry in a foreign country adjacent to the United States, upon through bills of lading destined to any place within the United States, at any other than upon the inland tariff covering other freight from such port of entry to such place of destination, or at any other than the same rates established in such inland tariff for the carriage of other like kind of freight, in the elements of bulk, weight, value and expense of carriage. . . ." The railway company refused to obey the order, and a proceeding was initiated by complaint filed in the Circuit Court to compel it to do so. The substance of the answer of the railroad, so far as material to the matter now under review, was thus recited by the court (pp. 205–6):

" The answer of the Texas and Pacific Railway Company to the petition of the New York Board of Trade and Transportation before the Interstate Commerce Commission, and the answer of said company to the petition of the Commission filed in the Circuit Court, allege that rates for the transportation of commodities from Liverpool and London, England, to San Francisco, California, are in effect fixed and controlled by the competition of sailing vessels for the entire distance;

by steamships and sailing vessels in connection with railroads
across the Isthmus of Panama; by steamships and sailing ves-
sels from Europe to New Orleans, connecting there under
through arrangements with the Southern Pacific Railway
Company to San Francisco : That, unless the defendant com-
pany charges substantially the rates specified in its answer, it
would be prevented, by reason of the competition aforesaid,
from engaging in the carrying and transportation of property
and import traffic from Liverpool and London to San Francisco,
and would lose the revenue derived by it therefrom, which is
considerable, and important and valuable to said company :
That the rates charged by it are not to the prejudice or
disadvantage of New Orleans, and work no injury to that
community, because, if said company is prevented from par-
ticipating in said traffic, such traffic would move via the other
routes and lines aforesaid without benefit to New Orleans,
but, on the contrary, to its disadvantage : That the foreign
or import traffic is upon orders by persons, firms and corpora-
tions in San Francisco and vicinity buying direct of first hands
in London, Liverpool and other European markets; and if the
order of the Commission should be carried into effect it would
not result in discontinuance of that practice or in inducing
them to buy in New Orleans in any event: That the result
of the order would be to injuriously affect the defendant
company in the carriage of articles of foreign imports to
Memphis, St. Louis, Kansas City and other Missouri River
points. . . ."

After stating that the foregoing facts were fully established
by the proof and in effect conceded, and after remarking (p.
207) that they " would seem to constitute ' circumstances and
conditions ' worthy of consideration, when carriers are charged
with being guilty of unjust discrimination or of giving unrea-
sonable and undue preference or advantage to any person or
locality," the court observed (p. 217):

" The Commission justified its action wholly upon the con-
struction put by it on the Act to regulate Commerce, as for-
bidding the Commission to consider the ' circumstances and
conditions ' attendant upon the foreign traffic as such ' circum-

stances and conditions' as they are directed in the act to consider.   The Commission thought it was constrained by the act to regard foreign and domestic traffic as like kinds of traffic under substantially similar circumstances and conditions, and that the action of the defendant company in procuring through traffic that would, except for the through rates, not reach the port of New Orleans, and in taking its *pro rata* share of such rates, was an act of 'unjust discrimination,' within the meaning of the act.

"In so construing the act we think the Commission erred."

Later, in recurring to the subject of competition as creating dissimilarity of circumstance and condition, the court said (p. 233):

"That among the circumstances and conditions to be considered, as well in the case of traffic originating in foreign ports as in the case of traffic originating within the limits of the United States, competition that affects rates should be considered, and in deciding whether rates and charges made at a low rate to secure foreign freights which would otherwise go by other competitive routes are or are not undue and unjust, the fair interests of the carrier companies and the welfare of the community which is to receive and consume the commodities are to be considered."

In *Interstate Commerce Commission* v. *Alabama Midland Railway*, 168 U. S. 144, the controversy was this: A proceeding was commenced to compel a carrier to obey an order of the Commission forbidding the charge of a lesser rate for transportation to Montgomery, the longer distance, than was charged to Troy on the same line, the shorter distance.   The nature of the competition relied on by the carriers is fully shown by a statement in the opinion, referring to one of the assignments of error made in the cause.   The court said (Ib. p. 162):

"Errors are likewise assigned to the action of the court in having failed and refused to affirm and enforce the report and opinion of the Commission, wherein it was found and decided, among other things, that the defendants, common carriers which participate in the transportation of class goods to Troy

from Louisville, St. Louis and Cincinnati, and from New York, Baltimore and other Northeastern points, and the defendants, common carriers which participate in the transportation of phosphate rock from South Carolina and Florida to Troy, and the defendants, common carriers which participate in the transportation of cotton from Troy to the ports of New Orleans, Brunswick, Savannah, Charleston, West Point or Norfolk, as local shipments or for export, have made greater charges, under substantially similar circumstances and conditions, for the shorter distance to or from Troy than for longer distances over the same lines in the same direction, and have unjustly discriminated in rates against Troy, and subjected said place and dealers and shippers therein to undue and unreasonable prejudice and disadvantage in favor of Montgomery, Eufaula, Columbus and other places and localities and dealers and shippers therein, in violation of the provisions of the Act to regulate Commerce."

It will thus be observed that the facts presented were, in legal effect, the equivalent of those arising on this record. The competition which the carrier asserted had created such dissimilarity of circumstance and condition as justified, on its own motion, the lesser charge for the longer than was made for the shorter distance, was competition not only arising by water transportation, but alleged to spring from common carriers who were confessedly subject to the control of the Act to regulate Commerce. The error which it was asserted the record contained was that such competition had been held, by the lower courts, sufficient to create dissimilar circumstances and conditions, and that the right of the carrier to avail himself of such dissimilarity without the previous assent of the Commission had been also sustained. This court said (pp. 162–3):

"Whether competition between lines of transportation to Montgomery, Eufaula and Columbus justifies the giving of those cities a preference or advantage in rates over Troy, and, if so, whether such a state of facts justifies a departure from equality of rates without authority from the Interstate Commerce Commission under the proviso of the fourth section

of the act, are questions of construction of the statute, and are to be determined before we reach the question of fact in this case."

Proceeding to the question of law, the construction of the fourth section, which was involved in supporting the interpretation of the Commission, it was stated, as follows: "It is contended in the brief filed on behalf of the Interstate Commerce Commission that the existence of rival lines of transportation, and consequently, of competition for the traffic, are not facts to be considered . . . when determining whether property transported over the same line is carried, 'under substantially similar circumstances and conditions' as that phrase is found in the fourth section of the act." The court then examined this question, and after citing from an opinion of Judge Cooley in the matter of *In re Louisville & Nashville Railroad,* 1 Int. C. C. Rep. 31, 78, said (p. 164):

"That competition is one of the most obvious and effective circumstances that make the conditions, under which a long and short haul is performed substantially dissimilar, and as such must have been in the contemplation of Congress in the passage of the Act to regulate Commerce, has been held by many of the Circuit Courts. It is sufficient to cite a few of the number: *Ex parte Koehler,* 31 Fed. Rep. 315; *Missouri Pacific Railway* v. *Texas & Pacific Railway,* 31 Fed. Rep. 862; *Interstate Commerce Commission* v. *Atchison, Topeka &c. Railroad,* 50 Fed. Rep. 295; *Same* v. *New Orleans & Texas Pacific Railroad,* 56 Fed. Rep. 925, 943; *Behlmer* v. *Louisville & Nashville Railroad,* 71 Fed. Rep. 835; *Interstate Commerce Commission* v. *Louisville & Nashville Railroad,* 73 Fed. Rep. 409."

It is to be remarked that among the cases approvingly cited in the passage just quoted will be found the opinion of the Circuit Court in the very case now before us, which opinion was opposed to the construction of the law taken by the Commission and to that announced by the Circuit Court of Appeals in this cause. Referring to the claim that under a correct interpretation of the proviso of the fourth section carriers were not allowed to avail themselves of dissimilar

circumstances and conditions, arising from competition, without the previous assent of the Commission, the court again cited from an opinion of the Interstate Commerce Commission delivered by Judge Cooley, as follows (pp. 168–169) :

" That which the act does not declare unlawful must remain lawful if it was so before, and that which it fails to forbid the carrier is left at liberty to do, without permission of any one. . . . The charging or receiving the greater compensation for the shorter than for the longer haul is seen to be forbidden only when both are under substantially similar circumstances and conditions ; and, therefore, if in any case the carrier, without first obtaining an order of relief, shall depart from the general rule, its doing so will not alone convict it of illegality, since, if the circumstances and conditions of the two hauls are dissimilar, the statute is not violated. . . . Beyond question, the carrier must judge for itself what are the 'substantially similar circumstances and conditions' which preclude the special rate, rebate or drawback, which is made unlawful by the second section, since no tribunal is empowered to judge for it until after the carrier has acted, and then only for the purpose of determining whether its action constitutes a violation of law. The carrier judges on peril of the consequences; but the special rate, rebate or drawback which it grants is not illegal when it turns out that the circumstances and conditions were not such as to forbid it; and as Congress clearly intended this, it must also, when using the same words in the fourth section, have intended that the carrier, whose privilege was in the same way limited by them, should in the same way act upon its judgment of the limiting circumstances and conditions."

And the approval of the construction given to the act in the passage from the opinion of Judge Cooley was not left to implication, since the court added (p. 169):

" The view thus expressed has been adopted in several of the Circuit Courts, (*Interstate Commerce Commission* v. *Atchison, Topeka &c. Railroad,* 50 Fed. Rep. 295, 300; *Same* v. *Cincinnati, N. O. & Tex. Pac. Railway,* 56 Fed. Rep. 925, 943 ; *Behlmer* v. *Louisville & Nashville Railroad,* 71 Fed.

Rep. 835, 839;) and we do not think the courts below erred in following it in the present case.   We are unable to suppose that Congress intended, by the fourth section and the proviso thereto, to forbid common carriers, in cases where the circumstances and conditions are substantially dissimilar, from making different rates until and unless the Commission shall authorize them so to do."

It is then settled that the construction given in this cause by the Interstate Commerce Commission and the Circuit Court of Appeals to the fourth section of the Act to regulate Commerce was erroneous, and hence that both the Interstate Commerce Commission and the Circuit Court of Appeals mistakenly considered, as a matter of law, that competition, however material, arising from carriers who were subject to the Act to regulate Commerce could not be taken into consideration, and likewise that all competition, however substantial, not originating at the initial point of the traffic, was equally, as a matter of law, excluded from view.   It follows that the decree of the Circuit Court must be reversed unless it be the duty of this court to examine the evidence, which was not passed on by the Commission or the Circuit Court of Appeals, for the purpose of ascertaining whether the competition relied on was so substantial and so controlling on traffic and rates as to cause it to produce a dissimilarity of circumstance and condition within the meaning of the fourth section of the act.   A consideration of this subject leads to a solution of the third question which we have previously stated was involved in the cause.   In passing, however, it is well to say that both the opinions of this court, just referred to, were announced subsequently to the decision in this case by the Interstate Commerce Commission and by the Circuit Court, and moreover that the opinion of this court in the last cause (the *Midland case*) was announced after the decision of the Circuit Court of Appeals of the case now here.   Indeed, since the decision last referred to, it is not denied that the Interstate Commerce Commission have recognized that the interpretation previously given by it to the fourth section had been decided to be unsound, hence in the practical application of the law, since

the decision by this court in the *Midland case,* the construc- tion of the statute which was announced by the Commission in previous cases as well as in this has no longer been applied. 11 Ann. Rep. I. C. C. (1897), pp. 38, 43, 91; 7 I. C. C. Rep., pp. 456, 479, 480; *Savannah Bureau of Freight & Transpor- tation* v. *Charleston & Savannah Ry. Co. et al.*

Before determining the final question we notice certain contentions pressed in argument, whereby it is asserted that there is such a difference between the legal issues here arising and those which were presented in the cases referred to, that this case should not be controlled by them. In any event, it is argued, the action of the Commission and the Circuit Court of Appeals in this controversy was of such a nature as to ren- der the previous rulings of this court inapposite, and hence it is unnecessary to apply them. Whilst it is not denied as regards competition arising from other carriers at the place of origin of the traffic, who were subject to the control of the Act to regulate Commerce, that the decision here under review is not in accord with the rulings of this court, such it is claimed is not the case as to competition not originating at the initial point of carriage. From this premise it is argued that it was correctly decided below that substantial and mate- rial competition resulting from conditions existing at the point of delivery, such as accessibility of that place to other lines of transportation from other places by rail or water, or both, was, as a matter of law, correctly decided below to be with- out legal efficacy in producing dissimilarity of circumstances and conditions. In this regard, then, the decree below, it is insisted, was correct. But the facts which were presented in the records passed on by this court, in the cases to which we have referred, do not justify the premise from which this pre- sumed difference is deduced. We do not stop, however, to analyze those facts, because, granting, *arguendo,* the assump- tion upon which the suggested distinction is based, we think it is without merit. What was decided in the previous cases was that under the fourth section of the act substantial com- petition which materially affected transportation and rates might under the statute be competent to produce dissimilarity

of circumstances and conditions, to be taken into consideration
by the carrier in charging a greater sum for a lesser than for
a longer haul.  The meaning of the law was not decided to
be that one kind of competition could be considered and not
another kind, but that all competition, provided it possessed
the attributes of producing a substantial and material effect
upon traffic and rate making, was proper under the statute to
be taken into consideration.  Indeed, if the distinction con-
tended for were sound it would follow that the greater and
more material competition would be without weight in deter-
mining whether a dissimilarity of circumstances and condi-
tions existed, whilst the lesser competition would be potential
for such purpose.  Not only this, but if the distinction be
applicable, only that competition which might deflect at the
point of origin, the traffic from one carrier to another would
be within the purview of that portion of the fourth section
now under consideration, and competition which was so great
as to absolutely prevent the movement of the traffic, unless
the lesser rate was exacted, would be outside of its opera-
tion.  This would lead to the construction that the statute,
in empowering a carrier, under certain competitive conditions,
of his own volition, to exact a lesser rate for the longer haul,
contemplated only the interest of some particular carrier and
not at all the public interest.  Whilst the unsoundness of
the proposition is thus shown, from the contradiction which
inheres in it, the erroneous conception upon which it rests is
fully demonstrated in the following excerpt from the opinion
in *Texas & Pacific Railway* v. *Interstate Commerce Commis-
sion, supra,* 211 :

  " So, too, it could not readily be supposed that Congress
intended, when regulating such commerce, to interfere with
and interrupt, much less destroy, sources of trade and commerce
already existing, nor to overlook the property rights of those
who had invested money in the railroads of the country, nor
to disregard the interests of the consumers, to furnish whom
with merchandise is one of the principal objects of all systems
of transportation."

Indeed, in the cases by which the controversy here before

us is controlled, attention was pointedly called to the fact that in considering the power of the carrier, of his own motion, to charge a lesser sum for the longer haul, not only was the interest of the carrier to be taken into account, but also the interest of the public, especially at the place from which the traffic moved and the place to which it was to be delivered, and to these principles we shall before concluding again advert.

The argument upon which it is claimed that even if the legal principles here involved are not to be distinguished from those established by the decisions of this court, nevertheless the decree of the Circuit Court of Appeals should be affirmed, is as follows:

The Commission and the Circuit Court of Appeals, it is asserted, although they may have expressed erroneous opinions as to the construction of the statute, yet, ultimately, in substance, decided, as a matter of fact, that the competition was not of sufficient weight to bring about dissimilarity of circumstances and conditions. But this suggestion is without merit. We have shown, in our previous analysis of the action of the Commission and of the views expressed by the Circuit Court of Appeals, that whilst the facts were considered in so far as was necessary to determine that the competition was due only to certain particular causes, the result of the competition was not examined in order to ascertain the substantial materiality of its operation on traffic and rates. And this, because both the Commission and the Circuit Court of Appeals determined that competition of the particular character which they found that relied on to be, as a matter of law, however weighty in its operation on rates, was not legally entitled to be considered in reviewing the action of the carrier.

This failure to consider the evidence points to the distinction between this cause and that of *Cin., N. O. & Texas Pacific Railway* v. *Interstate Commerce Commission*, 162 U. S. 184, upon which reliance is placed. In that case the court, from an examination of the whole record, considered that the result of the action of the Commission and the Circuit Court of Appeals had been substantially to decide not that the character of competition relied on could not be taken

into view, but that fully weighing and considering it, sufficient
proof did not result to show that it was so substantial and so
material as to justify deciding that there were dissimilar cir-
cumstances and conditions. The judgment below was, because
of this view as to such question, affirmed. The court said
(p. 194): "But the question was one of fact, peculiarly within
the province of the Commission, whose conclusions have been
accepted and approved by the Circuit Court of Appeals, and
we find nothing in the record to make it our duty to draw a
different conclusion." If it be again, *arguendo*, conceded that
the state of the record in that case was such that an analysis of
the action taken below might have well led the court to a dif-
ferent opinion; in other words, might have justified it in hold-
ing that both the Commission and the Circuit Court of Appeals
had rested their conclusions, not on the want of proof as to the
claimed competition, but solely on the absence of legal power
to assert competition of the character relied on, such conces-
sion could have no influence upon the decision of this cause.
This follows because the only deduction possible from the
proposition would be that the particular case had been decided
on a question of fact, when it should have been controlled by
a question of law, which would afford no reason for the failure
to apply sound principles of law to the facts of this record.
It involves a complete *non sequitur* to assert that because legal
principles may not have been applied to a given case, on the
assumption that the facts did not render their application
necessary, therefore, in future cases, where it was found that
the facts brought the controversy within the principles, they
should not be applied.

It remains only to examine the last question — that is,
whether this court, as a matter of first impression, should
weigh the evidence for the purpose of ascertaining whether
it established such substantial and material competition as
justified the carrier in concluding that dissimilarity of cir-
cumstance and condition was brought about. If it were true,
as asserted in the argument for the appellee, that where the
inherent character of the competition was of a nature to be
taken into consideration, any competition, however remote

and unsubstantial its influence on rates and traffic, would be sufficient to bring about dissimilarity of circumstances and conditions, the question would be easy of solution, for then to weigh the testimony would involve no serious duty. But this suggestion rests on an entire misconception of the adjudications of this court. In considering the right of a carrier to act on competitive conditions, deemed by him to produce dissimilarity of circumstances and conditions, the court, in *Interstate Commerce Commission* v. *Alabama & Midland Railway*, 168 U. S. 173, said:

"But it does not mean that the action of the carriers, in fixing and adjusting the rates in such instances, is not subject to revision by the Commission and the courts, when it is charged that such action has resulted in rates unjust or unreasonable, or in unjust discriminations and preferences."

Again (p. 167) it was said:

"In order further to guard against any misapprehension of the scope of our decision it may be well to observe that we do not hold that the mere fact of competition, no matter what its character or extent, necessarily relieves the carrier from the restraints of the third and fourth sections, but only that these sections are not so stringent and imperative as to exclude in all cases the matter of competition from consideration in determining the questions of 'undue or unreasonable preference or advantage,' or what are 'substantially similar circumstances and conditions.' The competition may in some cases be such as, having due regard to the interests of the public and of the carrier, ought justly to have effect upon the rates, and in such cases there is no absolute rule which prevents the Commission or the courts from taking that matter into consideration."

It follows that whilst the carrier may take into consideration the existence of competition as the producing cause of dissimilar circumstances and conditions, his right to do so is governed by the following principles: First. The absolute command of the statute that all rates shall be just and reasonable, and that no undue discrimination be brought about, though, in the nature of things, this latter consideration may

in many cases be involved in the determination of whether competition was such as created a substantial dissimilarity of condition.    Second.  That the competition relied upon be, not artificial or merely conjectural, but material and substantial, thereby operating on the question of traffic and rate making the right in every event to be only enjoyed with a due regard to the interest of the public, after giving full weight to the benefits to be conferred on the place from whence the traffic moved as well as those to be derived by the locality to which it is to be delivered.  If, then, we were to undertake the duty of weighing the evidence, in this record, we would be called upon, as a matter of original action, to investigate all these serious considerations which were shut out from view by the Commission, and were not weighed by the Circuit Court of Appeals, because both the Commission and the court erroneously construed the statute.    But the law attributes *prima facie* effect to the findings of fact made by the Commission, and that body, from the nature of its organization and the duties imposed upon it by the statute, is peculiarly competent to pass upon questions of fact of the character here arising. In *Texas & Pacific Railway* v. *Interstate Commerce Commission,* (*ubi supra*,) the court found the fact to be that the Commission had failed to consider and give weight to the proof in the record, affecting the question before it, on a mistaken view taken by it of the law, and that on review of the action of the Commission the Circuit Court of Appeals, whilst considering that the legal conclusion of the Commission was wrong, nevertheless proceeded as a matter of original investigation to weigh the testimony and determine the facts flowing from it.    The court said (p. 238):

"If the Circuit Court of Appeals was of opinion that the Commission in making its order had misconceived the extent of its powers, and if the Circuit Court had erred in affirming the validity of an order made under such misconception, the duty of the Circuit Court of Appeals was to reverse the decree, set aside the order, and remand the cause to the Commission, in order that it might, if it saw fit, proceed therein according to law.    The defendant was entitled to have its

defence considered, in the first instance, at least, by the Commission upon a full consideration of all the circumstances and conditions upon which a legitimate order could be founded. The question whether certain charges were reasonable or otherwise, whether certain discriminations were due or undue, were questions of fact, to be passed upon by the Commission in the light of all facts duly alleged and supported by competent evidence, and it did not comport with the true scheme of the statute that the Circuit Court of Appeals should undertake, of its own motion, to find and pass upon such questions of fact, in a case in the position in which the present one was."

We think these views should be applied in the case now under review. In this case, however, the proceeding to enforce the order of the Commission was initiated by a private individual on behalf of himself and other interested parties not named, and the petitioner in the Circuit Court has died since the argument and submission of the cause in this court. We are of opinion, therefore, that

*The decree of the Circuit Court of Appeals should be reversed with costs, that the case be remanded to the Circuit Court with instructions to modify its decree adjudging that the order of the Commission be set aside with costs, by providing that the dismissal be without prejudice to the right of a party in interest to apply to the Commission to be substituted in the original proceeding before the Commission in the stead of the deceased petitioner, and that upon such substitution the Commission should proceed, upon the evidence already introduced before it or upon such evidence and any additional evidence which it might allow to be introduced, to hear and determine the matter of controversy in conformity to law. A decree will be entered accordingly, such entry to be made nunc pro tunc as of the date of the submission of the cause in this court.*