INTERSTATE COMMERCE COMMISSION v. SOUTHERN RY. CO. et al.

SAME v. SOUTHERN RY. CO.

(Circuit Court, N. D. Alabama, S. D.　November 3, 1900.)

Nos. 85 and 86.

1. CARRIERS—REGULATION OF RATES—CIRCUMSTANCES AND CONDITIONS — COMPETITION.

Among the circumstances and conditions to be considered, as well in the case of traffic originating in foreign ports as in the case of traffic originating within the limits of the United States, competition that affects rates should be considered, and in deciding whether rates and charges made at a low rate to secure foreign freights, which would otherwise go by other competitive routes, are or are not undue and unjust, the fair interests of the carrier companies, and the welfare of the community, which is to receive and consume the commodities, are to be considered. Case cited: Texas & P. Ry. Co. v. Interstate Commerce Commission, 16 Sup. Ct. 666, 162 U. S. 233, 234, 40 L. Ed. 940.

2. SAME.

That competition is one of the most obvious and effective circumstances that make the conditions under which a long and short haul is performed substantially dissimilar, and as such must have been in the contemplation of congress in the passage of the act to regulate commerce, has been held by many of the circuit courts.　Case cited: Interstate Commerce Com-

mission v. Alabama Midland Ry. Co., 18 Sup. Ct. 50, 168 U. S. 164, 42 L. Ed. 424.

**3. SAME.**

All competition, provided it possesses the attribute of producing a substantial and material effect upon traffic and rate making, is proper, under the statute, to be taken into consideration. The fact that the competition is wholly between carriers who are subject to the act is not material.

**4. SAME—PRACTICE.**

A carrier defendant is entitled to have its defense considered in the first instance, at least, by the commission, upon a full consideration of all the circumstances and conditions upon which a legitimate order could be founded. Case cited: Railroad Co. v. Behlmer, 20 Sup. Ct. 209, 175 U. S. 675, 676, 44 L. Ed. 319.

**5. SAME.**

Where the interstate commerce commission refuses to weigh the evidence in regard to competition, merely because the competition is wholly between carriers who are subject to the act, the proper practice in this court is to dismiss the petition filed to enforce the order of the commission, and remand the case to the commission, without prejudice to the right of any party in interest to apply to the commission to proceed, upon the evidence already introduced before it, or upon such evidence as it may allow to be introduced, to hear and determine the matter in controversy in conformity to law. Case cited: Railroad Co. v. Behlmer, 20 Sup. Ct. 209, 175 U. S. 676, 44 L. Ed. 320.

(Syllabus by the Court.)

L. A. Shaver, for complainant.
Ed. Baxter, for defendants.

BRUCE, District Judge. The controversy in case No. 85 was commenced on the 5th day of March, 1895, when E. D. McClelen, mayor of the city of Piedmont, Ala., and certain grocers and general merchants, doing business at said city, filed a petition before the interstate commerce commission, under the act to regulate commerce passed February 4, 1887, as amended, praying for an order commanding the defendants to said petition to cease and desist from doing certain acts, which said petitioners claimed to be in violation of the statute referred to. The parties complained of were the Southern Railway Company, the Pennsylvania Railroad Company, the Cumberland Valley Railroad Company, the Baltimore & Ohio Railroad Company, the Norfolk & Western Railroad Company, and F. J. Kimball and Henry Fink, receivers thereof, and the Baltimore, Chesapeake & Richmond Steamboat Company. It was averred that the defendants to said petition were common carriers, engaged in the interstate transportation of property by continuous carriage or shipment over various lines or routes, wholly by railroad, between points in the states of New York, Pennsylvania, Maryland, Virginia, and Tennessee and points in the state of Alabama, and as such common carriers were subject to the provisions of the statute above referred to.

The principal subject of complaint was that said defendants have established certain specified rates for the transportation from Baltimore, Md., to Piedmont and Anniston, Ala., on the first six classes of property covered by the Southern Railway & Steamship Association classification, which are lower to Anniston than to Piedmont; that rates via the defendants' lines from New York and Philadelphia are similar in relation to those applying from Baltimore to Pied-

mont and Anniston; that Piedmont is on the direct line to Anniston when traffic from either New York, Philadelphia, or Baltimore is routed via the Norfolk & Western Railroad and the Western Division of the Southern Railway; that said rates from New York, Philadelphia, and Baltimore to Piedmont "are unreasonable and unjust in comparison with the above described rates established and charged by defendants for carrying like traffic from New York, Baltimore, or Philadelphia to Anniston, and they subject complainants and others doing business at Piedmont, and in the surrounding territory, to unjust discrimination, and undue and unreasonable preference and disadvantage, in favor of, and to the undue preference of, merchants and dealers in and about Anniston; that such rates are greater for the transportation of like kind of property for the shorter distances from New York, Philadelphia, or Baltimore to Piedmont than for the longer distances over the same line, in the same direction, from New York, Philadelphia, or Baltimore to Anniston, and in violation of the provisions of section 4 of the act to regulate commerce."

A separate answer was filed by each of the defendants to said petition, except the Baltimore, Chesapeake & Richmond Steamboat Company, whose answer was included in that of the Southern Railway Company. The answer of the Southern Railway Company to said petition admits that it is a common carrier, engaged in interstate transportation of property by continuous carriage or shipment, wholly by rail. It admits having established rates for the transportation from Baltimore to Piedmont and Anniston, respectively, of property covered by the Southern Railway & Steamship Association classification. It denies that the rates to Piedmont are unreasonable and unjust in comparison with the rates to Anniston, and avers that rates charged from Baltimore and other Eastern cities are made as the result or sequence of active competition between the Georgia Pacific Railway, the East Tennessee, Virginia & Georgia Railway, and the Louisville & Nashville Railroad Company, with their several connections, prior to the 1st of August, 1894, when the East Tennessee, Virginia & Georgia road was purchased by the Southern Railway Company; that the rates from Baltimore and other Eastern cities to Piedmont are higher than from those points to Anniston, for the reason that the competition to Piedmont is not such as necessitates as low rates as to Anniston; that Piedmont is reached only by the East & West Railroad and the Southern Railway, and that at no time has the competition from the East to that point between the East & West Road and its own been as strong and active as between the lines centering at Anniston. It admits that the rates are greater for the transportation of like kind of property for the shorter distance from New York, Philadelphia, or Baltimore to Piedmont than for the longer distance over the same line, in the same direction, from said cities to Anniston; but it denies that this is a violation of the act to regulate commerce, because the circumstances and conditions are not substantially similar. The answer of the Norfolk & Western Railroad Company to said petition denies that the rates to Piedmont are unreasonable and unjust in comparison with the rates to Anniston.

105 F.—45

The controversy in case No. 86 was also commenced on the 5th day of March, 1895, when the said E. D. McClelen, mayor as aforesaid, and said grocers and general merchants doing business at Piedmont, filed another petition before said commission, under said act to regulate commerce as amended, praying for an order commanding the defendants to said last-mentioned petition to cease and desist from doing certain other acts, which said petitioners claimed to be in violation of the statute referred to. The parties complained of were the Southern Railway Company, the Chattanooga, Rome & Columbus Railroad Company, and Eugene E. Jones, the receiver thereof, and the East & West Railroad Company. It was averred that the defendants to said petition were common carriers, engaged in the interstate transportation of property by continuous carriage or shipment over various lines or routes, wholly by railroad, between points in the state of Tennessee and points in the state of Alabama, and as such common carriers were subject to the provisions of the statute above referred to. The principal subject of complaint in said petition was that the roads of the defendants the Southern Railway Company and the Chattanooga, Rome & Columbus Railroad Company are used in the transportation of traffic from Chattanooga to both Piedmont and Anniston, the Southern Railway Company having a line of its own to both points, and the Chattanooga, Rome & Columbus Railroad Company having a route to Anniston in connection with the Southern Railway Company, and a route to Piedmont in connection with the East & West Railroad Company; that the distance from Chattanooga to Piedmont is 119 miles by the Southern Railway, and 122 miles by the line of the Chattanooga, Rome & Columbus and East & West Railroad Companies; that the distance from Chattanooga to Anniston is 143 miles by the Southern Railway, and 142 miles by the Chattanooga, Rome & Columbus Railroad and the Southern Railway; that traffic over the line of the Southern Railway between Chattanooga and Piedmont is carried over a less distance than traffic from Chattanooga to Anniston by any existing route between those points; that the defendants have established certain specified rates for the transportation from Chattanooga, Tenn., to Piedmont, Ala., and Anniston, Ala., of property embraced in the several classes of freight set forth in the Southern Railway & Steamship Association classification; that the said rates on classes 5, 6, A, B, C, D, E, H, and F are unreasonably and unjustly higher from Chattanooga to Piedmont than from Chattanooga to Anniston, and subject complainants and others doing business at Piedmont and in the surrounding territory to unjust discrimination and undue and unreasonable prejudice and disadvantage in favor of, and to the undue preference of, merchants and dealers in and about Anniston; that said rates are greater for the transportation, under substantially similar circumstances and conditions, of like kind of property by the defendant the Southern Railway Company for the shorter distance from Chattanooga to Piedmont than for the longer distance over the same line, in the same direction, from Chattanooga to Anniston, and in violation of the provisions of section 4 of the act to regulate commerce. Said petitions were heard together by the commission, and testi-

mony was taken before the commission on the foregoing issues. On June 6, 1896, the commission decided the cases, and filed a report and opinion, in which it sets forth its findings of fact and conclusions in reference to the issues involved in each of said cases.

In case No. 85 the commission issued an order requiring the defendants in that case to desist, on or before a date named, from charging any greater compensation in the aggregate for the transportation of freight articles from New York, in the state of New York, Philadelphia, in the state of Pennsylvania, or Baltimore, in the state of Maryland, for the shorter distance over their respective lines to Piedmont, in the state of Alabama, than for the longer distance over the same line, in the same direction, to Anniston, in the state of Alabama, the shorter being included within the longer distance. In case No. 86 the commission issued an order requiring the defendant the Southern Railway Company to desist, on or before a date named, from charging any greater compensation in the aggregate for the transportation of freight articles from Chattanooga, in the state of Tennessee, for the shorter distance, to Piedmont, in the state of Alabama, than for a longer distance over the same line, in the same direction, to Anniston, in the state of Alabama, the shorter being included within the longer distance. Said orders not having been obeyed, the commission filed separate petitions in this court to enforce compliance with said orders, respectively. The defendants to said last-mentioned petitions answered them, respectively, and traversed all matters of equity alleged against them. The two cases were heard together in this court. The testimony taken before the commission was used on the hearing in this court, and additional testimony was taken by each of the parties after the cases got to this court. The cases were argued orally and upon printed briefs. The questions which arise on these records involve the consideration of several provisions of the act to regulate commerce, referred to above.

It is conceded that the defendants in both cases in this court are common carriers, engaged in the transportation of interstate passengers and property wholly by railroad to Piedmont and Anniston, respectively, in the state of Alabama, and that as such common carriers, in respect to such transportation, they were and are subject to the provisions of said act. It is conceded that, when the cases were heard before the commission, the rates on freight from Baltimore, New York, Philadelphia, and Chattanooga, respectively, were lower to Anniston than to Piedmont on all of the classes. It is conceded that Anniston is a junction point of the Southern Railway and the Louisville & Nashville Railroad; that Piedmont is a junction point of the Southern Railway and the East & West Railroad; that Piedmont is on the direct line to Anniston, when traffic from New York, Philadelphia, or Baltimore is routed via the Norfolk & Western Railroad and the Southern Railway; and that Anniston is the more distant point by 15 miles, in a southwesterly direction, than Piedmont. It is conceded that the Southern Railway has a line of its own from Chattanooga to Piedmont, and that in shipments from Chattanooga, via the Southern Railway, Anniston is the more distant point by 15 miles. It is conceded that in both cases the shipments

to Piedmont and Anniston, respectively, are over the same lines, and in the same direction; that the shorter distance to Piedmont is included within the longer distance to Anniston; and that defendants charge a greater compensation in the aggregate for the shorter distance to Piedmont than for the longer distance to Anniston. In other words, it is conceded that both cases fall within the fourth section of the commerce act, provided the transportation in controversy is done under substantially similar circumstances and conditions to Piedmont as to Anniston.

The commission did not consider whether the rates to Piedmont and Anniston, respectively, were just and reasonable, because it deemed it unnecessary to do so. The reason for this conclusion was stated by the commission as follows:

"There is no charge in either complaint that the rates in question to Piedmont are excessive, or are unreasonable in themselves, but the complaint, in substance, is that they are unreasonable and unjust, as compared with the rates to Anniston, in that they give the latter city an undue preference or advantage, and subject the former to an undue prejudice or disadvantage, in territory in which they meet in active competition."

The commission did not consider whether the disparity in rates between Piedmont and Anniston constituted an unjust discrimination against Piedmont under the second section, or an undue preference of Anniston under the third section, of the act. The reason for this conclusion was stated by the commission as follows:

"The exaction, without lawful excuse, of a greater compensation, in the aggregate, for the shorter than for the longer haul, over the same line, in the same direction, the shorter being included in the longer, which is forbidden by section 4 of the act to regulate commerce, is only a form of unjust discrimination or undue preference to which, it seems, congress desired to call particular attention, because of its prevalence in certain sections of the country. Both complaints allege violation of this provision of the law, and the proof, so far as rates are concerned, relates to this species of discrimination."

When it approached the fourth section of the act, the commission declined to weigh the evidence before it as to the existence of competition at Anniston, except so far as to enable it to determine that the evidence established that the competition at Anniston relied upon by the carriers was alone engendered by the presence there of other carriers, who were subject to the commerce law. Upon this point the commission said:

"The defendants claim that the greater charges for the shorter distances to Piedmont, as shown in these cases, are justified by the competition of another railroad carrier, subject to the act to regulate commerce. Under the construction by the commission of the fourth section, or 'long and short haul clause,' of the statute, in its former rulings, this claim cannot be admitted, except upon application to the commission for exemption from the rule, because the competition under which the defendants would justify the lower rate to Anniston, the longer haul, than to Piedmont, the shorter haul, arises with a competitor, the Louisville & Nashville Railroad Company, which is an interstate carrier by rail, and amenable to the act to regulate commerce. The element of competition, and all matters relative thereto, may be presented to the commission for determination upon application of defendants for relief from the operation of the fourth section of the act, under the proviso to said act. The decision herein is in no wise to be construed to pre-

clude the defendant from making such application under the provisions of the act."

In the case of Railroad Co. v. Behlmer, decided by the supreme court since these cases were argued in this court, the supreme court said:

"This determination of the commission to restrict its examination of the evidence solely to the extent necessary to enable it to ascertain the source and inherent character, and not the materiality, and substantiality, of the competition, and therefore to exclude wholly from view the latter considerations, was predicated on the conclusion that, as a matter of law, no competition, however great might be its influence on carriage and rate making, could be by the carrier taken into consideration, of his own motion, in determining whether a lesser sum would be charged for the longer than for the shorter haul, if such competition arose from the sources, or was wholly of the character, which it was found by the commission the proof established the competition relied on to be. That is to say, the commission concluded, as a matter of law, that it was unnecessary to weigh the facts for the purpose of determining the materiality and extent of the competition, because, however strongly the proof might demonstrate its potency upon the traffic and rates, nevertheless it would be without efficacy to give rise to such substantial dissimilarity as would justify the carrier, of his own motion, to charge a lesser rate for the longer than for the shorter haul. While this was held to be the law, at the same time it was decided that the character of competition which, from its very nature, was decided to be inadequate to create such legal dissimilarity in the conditions as to justify the carrier, of his own motion, charging a lesser sum for the longer than for the shorter haul, nevertheless might authorize the commission to sanction the lesser charge if the facts were presented to the commission, and its previous sanction to making such charge was obtained. Therefore the right of the carrier to prefer to the commission a request for authority to make the charge complained of, predicated upon the very grounds which were held insufficient to permit the carrier to do so on his own motion, was fully reserved. The ruling was, then, this: That some kinds of competition, however material and substantial in their operation, were yet inadequate, for the purpose of creating dissimilarity in circumstance and condition, and to justify the independent action of the carrier, although the identical conditions of competition might be sufficient to produce such dissimilarity as to justify the commission, on application made to it for such purpose, to authorize the carrier to charge less for a longer than was exacted for a shorter distance." Railroad Co. v. Behlmer, 175 U. S. 654, 655, 20 Sup. Ct. 211, 44 L. Ed. 311.

The construction of the fourth section of the act to regulate commerce, and the question whether competition which materially operated on traffic and rates was a proper subject to be considered by a carrier in charging a greater rate for the shorter than was asked for the longer distance, on account of the dissimilarity of circumstance and condition produced by such competition, was, after elaborate argument and great consideration, passed upon by the supreme court in Texas & P. Ry. Co. v. Interstate Commerce Commission, 162 U. S. 197, 16 Sup. Ct. 671, 40 L. Ed. 943. In that case the court said that:

"Among the circumstances and conditions to be considered, as well in the case of traffic originating in foreign ports as in the case of traffic originating within the limits of the United States, competition that affects rates should be considered, and in deciding whether rates and charges made at a low rate to secure foreign freights, which would otherwise go by other competitive routes, are or are not undue and unjust, the fair interests of the carrier companies and the welfare of the community which is to receive and consume the commodities are to be considered." 162 U. S. 233, 234, 16 Sup. Ct. 671, 40 L. Ed. 943.

The fourth section was again construed by the supreme court in Interstate Commerce Commission v. Alabama Midland Ry. Co., 168 U. S. 144, 18 Sup. Ct. 48, 42 L. Ed. 422. In that case the court said:

"That competition is one of the most obvious and effective circumstances that make the conditions under which a long and short haul is performed substantially dissimilar, and as such must have been in the contemplation of congress in the passage of the act to regulate commerce, has been held by many of the circuit courts." 168 U. S. 164, 18 Sup. Ct. 50, 42 L. Ed. 424.

In the same case the court also said:

"We are unable to suppose that congress intended by the fourth section and the proviso thereto to forbid common carriers, in cases where the circumstances and conditions are substantially dissimilar, from making different rates until and unless the commission shall authorize them so to do." 168 U. S. 169, 18 Sup. Ct. 50, 42 L. Ed. 424.

The fourth section was again construed by the supreme court in Railroad Co. v. Behlmer, 175 U. S. 648, 20 Sup. Ct. 216, 44 L. Ed. 317; and the court, after referring to its decision in the two last preceding cases, said:

"It is then settled that the construction given in this cause by the interstate commerce commission and the circuit court of appeals to the fourth section of the act to regulate commerce was erroneous, and hence that both the interstate commerce commission and the court of appeals mistakenly considered, as a matter of law, that competition, however material, arising from carriers who are subject to the act to regulate commerce, could not be taken into consideration." 175 U. S. 669, 20 Sup. Ct. 217, 44 L. Ed. 317.

In the same case the court further said:

"What was decided in the previous cases was that under the fourth section of the act substantial competition, which materially affected transportation and rates, might, under the statute, be competent to produce dissimilarity of circumstances and conditions, to be taken into consideration by the carriers in charging a greater sum for a lesser than for a longer haul. The meaning of the law was not decided to be that one kind of competition could be considered, and not another kind, but that all competition, provided it possessed the attribute of producing a substantial and material effect upon traffic and rate making, was proper, under the statute, to be taken into consideration." 175 U. S. 670, 671, 20 Sup. Ct. 219, 44 L. Ed. 319.

In the same case the court quoted from its opinion in Texas & P. Ry. Co. v. Interstate Commerce Commission, as follows:

"The defendant is entitled to have its defense considered in the first instance, at least, by the commission upon a full consideration of all the circumstances and conditions upon which a legitimate order could be founded." 175 U. S. 675, 676, 20 Sup. Ct. 219, 44 L. Ed. 320.

In the case last cited (i. e. the Behlmer Case) the supreme court, while holding that the commission had erred in failing to consider and give weight to the proof in the record affecting the question before it, refused to weigh the evidence, as a matter of first impression, and remanded the case to the circuit court, with instructions to modify its decree setting aside the order of the commission with costs, by providing that the dismissal be without prejudice to the right of any party in interest to apply to the commission to proceed upon evidence already introduced before it, or upon such evidence which it might allow to be introduced, to hear and determine the matter of controversy in conformity to law. 175 U. S. 676, 20 Sup. Ct. 219, 44 L. Ed. 320.

It seems that the cases now before this court clearly fall within the rule laid down by the supreme court in the Behlmer Case, and that the petition in each of said cases should be dismissed, with costs, but that such dismissal should be without prejudice to the right of any party in interest to apply to the commission to proceed upon the evidence already introduced before it, or upon such evidence and any additional evidence which it may allow to be introduced, to hear and determine the matter of controversy in conformity to law; and orders will be prepared accordingly.