Bigger, J.
The plaintiff states in its petition that it is a corporation duly incorporated and organized, and owns and operates a railroad from Toledo to Pomeroy in this state, and that its line passes through the villages of Logan, Athens, and other points and places, and that it has been engaged in operating its said line of railroad for more than eight years last past.
That the defendant, the Railroad Commission of Ohio, was *266 created by an act of the Legislature of April 2, 1906 (98 O. L., 342), and that subsequent to the passage of the act and its becoming a law, Messrs. J. C. Morris, O. H. Hughes and O. P. Gothlin were appointed as commissioners under said act, and that they have qualified and are now acting as such commis•sioners.
That on April 6, 1906, one Aaron E. Price presented his petition to the commission alleging that he is a citizen of the state of Ohio, residing in the village of Athens. That his business requires him to make frequent trips to the city of Columbus, and that many other citizens and residents of the village of Athens are also frequently under the necessity of making trips to the city of Columbus. That the plaintiff herein charges and collects from complainant and all other passengers from the village of Athens to Columbus, and from Columbus to Athens, a distance of 76.3 miles, the sum of $1.55, and for a round trip ticket between such points the sum of $3.10; that the plaintiff herein makes a practice of selling what are known as “twin tickets, ’ ’ to any person applying for the same at either Logan or Columbus for the sum of $1.60, which twin ticket entitles the holder thereof to one round trip from Logan to Columbus and return or Columbus to Logan and return, a round trip distance of 99.2 miles, or at the option of the holder two persons may use the ticket for a single trip from either of said points to the other; and that similar tickets are sold and used between Columbus and Lancaster, a station on the line of the plaintiff’s road and distant from Columbus 31.5 miles, the price of said twin ticket between said last named points being seventy-five cents.
Complainant further alleges that the plaintiff herein, in selling such twin tickets between Colqmbus and Lancaster and Cohunbus and Logan and at such reduced price, and entitling the holder thereof to such privileges, is conducting a practice and using a device, and giving a service and rates of fare to the said localities which constitutes an undue and unreasonable preference and advantage to the citizens and traveling public of said localities, and is subjecting the complainant and other citizens of the village of Athens and vicinity to an undue and *267 unreasonable prejudice and disadvantage, and that the plaintiff herein is violating the laws of Ohio; and the complainant prayed for an investigation by the said railroad commission, and for such order as might be reasonable and just and authorized by law.
It is then stated that the plaintiff herein answered this petition, admitting the selling of said twin tickets between the localities named, but denying the charge of discrimination and averring that such tickets were sold to meet electric interurban and suburban competition and to preserve its local passenger business between said points, and to encourage suburban travel.
It is stated that a hearing was had before said railroad commission upon the petition and answer and the evidence and argument of counsel, and that thereafter on April 18 a finding was made by the said commission that the said twin tickets were not a commutation ticket, nor sold at commutation rates, nor used for commutation purposes, but were sold by reason of competition existing between Lancaster and Columbus, and that to the extent that the plaintiff herein had reduced its rates between Columbus and Lancaster, and Columbus and Logan, below the rates in effect between Columbus and Athens, to such extent said rates unjustly and unreasonably discriminated against the locality of Athens, and against the complainant as a resident of Athens; and that the defendant cease and desist from said unjust and unreasonable discrimination so found by said commission to exist-.
The plaintiff prays for an injunction suspending or sétting aside said order of said commission, and that upon a full hearing the court vacate and set aside said order on the ground that the same is unreasonable and unlawful, and that the court, un'less the commission shall rescind its order, or shall modify or amend the same in accordance with the direction of the court, shall render judgment accordingly, and make an order in accordance with the evidence and the law.
To this petition the defendant, the Railroad Commission, makes answer denying that the order made is either unlawful or unreasonable.
*268 Section 23 of the Ohio railroad commission act (Revised Statutes 244-33) provides:
“That it shall be unlawful for any common carrier subject to the provisions of this act to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic, in any respect whatsoever, or to subject any particular person, company, firm, corporation or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever. ’ ’
Upon a hearing before the railroad commission it was found by the commission that the Hocking Valley Railway Company was guilty of unjustly and unreasonably discriminating against the complainant and other residents of the locality of Athens by reason of the use of this twin ticket and the rate at which it is sold between the localities of Columbus and Lancaster and Logan. That to the extent that the Hocking Valley Railway Company has cut its rate between Lancaster and Columbus below the rates of its competitor, and to the extent that it has reduced its rate between Logan and Columbus below the rate in effect between Athens and Columbus, that it is an unjust and unreasonable discrimination as against the residents of the locality of Athens, and it was ordered that to this extent the Hocking Valley Railway Company should cease and desist from its discrimination.
It is to be observed that there is no complaint in this case that the rate charged between Athens and Columbus is intrinsically unreasonable, but it is claimed that relatively to the rate charged between the localities of Logan and Lancaster and Columbus it is unjust and unreasonable.
The statute does not forbid discrimination in rates between-different localities, but requires that discrimination shall not be undue or unreasonable. There is no statutory provision which requires that railroad companies shall make the same absolute charge for carriage of passengers or freight of the same kind for the same distance. There was no such requirement at common law. Under like circumstances and conditions this was required at common law and is the requirement of the *269 statute. Section 22 (R. S. 244-32) of the act provides that it shall be unlawful for any railroad, or agent or officer thereof, either directly or indirectly by any devise to demand, collect or receive from any person, firm or corporation a greater or less compensation for any service rendered, or to be rendered for the transportation of persons or property than it charges, collects or receives from any other person, firm or corporation for a like or contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions. A penalty is provided for a violation of this section. It will be observed that it does not make penal the charging of a greater or less amount for any particular service to one person than to another, unless the circumstances and conditions are substantially similar.
Section 23 makes it unlawful to give any undue or unreásonable preference or advantage to any particular person, company, firm, corporation or locality, or any particular description of traffic, or to subject any particular person, company, firm, corporation or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage.
But it is said in argument by counsel representing the railroad commission that Rev. Stat. 3373 “prevents any discrimination for charging more than the same freight rate for the same distance, in the same direction on the same line whether the circumstances and conditions are" substantially similar or not.” The railroad commission in its opinion makes the same statement as to the effect of this section of the statute. It would seem from this statement that both the commission and counsel have a misconception of the import of this statute. It does not forbid a railroad company to charge a higher rate for carrying a given amount of freight on its line between two given points than it charges between two other points on its line. All that that section forbids is the charging- of a larger sum in the aggregate for carrying a ton of freight for any distance within this state than it charges for carrying a ton of freight of the same kind, or class, for an equal or greater distance over the same railroad, and connecting lines in the same direction. To illustrate, it woiild be unlawful under .the provisions of this section *270 for a railroad entering the city of Columbus to charge a larger sum for carrying a ton of freight from a.point fifty miles distant from Columbus on its line to this city than it charges for carrying to this city a ton of the same kind of freight from a point one hundred miles distant. It will be seen that it does not undertake to require uniformity in rates for carrying-freight. There is, therefore, no statutory provision which absolutely forbids discrimination in rates for the transportation of either freight or passengers. Nor did the common law require absolute uniformity in the rate to be charged.
It will be found from a careful examination of the authorities that under the common law the rule did not require common carriers to carry ,at the same absolute rate, but only that the rates be uniform under similar circumstances and conditions. In the case of Scofield v. Railway, 43 Ohio St., 571, Judge Atherton says in discussing the rule at common law:
“We can perhaps fully agree with the defendant’s counsel and with what he says in his brief: ‘The important point to every freighter is, that the charge shall be reasonable, and a right of action will not exist in favor of anyone, unless it be shown that unreasonable inequality has been made to his detriment,’ ”
It will be found from an examination of the large number of authorities cited in the opinion in that case in which the courts wore considering the rule of common law upon this subject that it was undue, unjust and unreasonable discriminations which were condemned! These, or words of similar qualification and limitation, will be found in the statement of the rule in nearly all of these cases showing that it was unlawful to make discrimination in rates when such discriminations were undue and unreasonable — that is, discriminations could not be made arbitrarily or capriciously or for the purpose of injuring or destroying an individual shipper or a locality, but must be the necessary result of circumstances and conditions, which, at common law, were recognized as justifying such discriminations.
The Supreme Court of New Jersey stated the rule in this language:
*271 “It can not be denied that, at the common law, every person under identical conditions had an equal right to the services of their commercial agents.” Messenger v. Railway, 36 N. J. Law, 407.
The Supreme Court of New Hampshire in the case of McDuffee v. Railway, 52 N. H., 430, 447, thus stated the rule:
“The common and equal right is to reasonable transportation service for a reasonable compensation. Neither the service nor the price is necessarily unreasonable because it is unequal, in a narrow, strict, and literal sense. * ® * The question is not merely whether the service or price is' absolutely unequal, in the narrowest sense, but also whether the inequality is unreasonable and injurious.”
Cases might be multiplied to the same effect, but these state the rule correctly at common law.
From this it will be seen that the statute (Section 23, Revised Statutes, 244-33), is subsfantially a re-enactment of the rule at common law.
The question, therefore, presented in this case for determination, as in every case of this sort, is this: Is the discrimination shown and admitted to’exist in this ease an undue and unreasonable discrimination against the residents of Athens and vicinity, and in favor of the residents of Logan and Lancaster and vicinity under all the circumstances shown to exist?
The Hocking Valley Railway Company seeks to justify this difference in rates upon the ground that it is brought into competition in the carrying of passengers, with the Scioto Valley Traction Company, a line of electric railroad which parallels its line between Columbus and Lancaster. It is contended however that competition will not justify this discrimination in rates.
Section 3 of the interstate commerce law and Section 23 of the Ohio railroad commission act are identical.
It has been settled by repeated decisions of the United States Supreme Court that competition is a factor, to be considered when discrimination in rates is charged against a railroad company. But it is claimed that there is a difference between the interstate commerce law and the Ohio railroad commission act *272 which, makes those decisions inapplicable, and that they are xxot authority upon the questions here presexxted because of the different provisions of the two acts. After a carefxxl comparison of these acts and a consideration of the decisions of the United States Supreme Court, 1 am led to the conclusion that these decisions áre authority for the claixxi of the plaintiff in this case that coxnpetition is a factor to be considered ixx determining whether the discxúxxxinatioxx here charged is or is xxot undue and xxnreasonable.
It is said that the United States Supreme Coxxrt has construed. Sections 2, 3 and 4 of the interstate commerce law together, and that, as there is no provision in the Ohio railroad commission act which corresponds to Section 4 of the interstate commerce law, that the decisions of the Supreme Court of the United States under that act can not be considered as axxthority here.
It is pointed out that Sectioxxs 2 axxd 4 of the interstate comlxierce law contained the expression, “hinder substantially similar circumstances and conditions,” axxd that the Supreme Court of the United States construing these three sectioxxs together in soxxxe way gave controllixxg effect to the language, “under sxxbstaixtially similar circumstances and conditions,” and by reason of those provisions in that act reached tlxe coxxclusioxx that competition was a factor to be considered in the determination of the question as to whether the discrixxxixxatioxx was or was not unlawful.
But it is clear that the United States Supreme Coxxrt did ixot give controlling or any effect to that phrase as found in Section 2 of tlxe federal act when it was coxxsi dering the question of whether coxnpetition was a factor to be Considered, for that coxxrt decided in tlxe case of Interstate Commerce Com. v. Railway, 168 U. S., 144, that the language, “xxnder substantially similar circumstances axxd conditions” used in Section 2, had 1x0 relation whatever to competition between rival routes, but that that section related only to inequalities between shippers over the same line*
The coxxrt also decided ixx that case, as I now recall it, that the phrase as xxsed in Sections 2 and 4 was xxsed in a different sexxse in the two sections with different meaning.
*273 It is equally clear, I think, that the Supreme Court of the United States held in that case that competition was a factor which should be considered when it was charged that the railroad company was violating either Section 3 or Section 4 of the federal act. Justice Shiras, in delivering the opinion in that case at page 170 says:
“As the third section of the act, which forbids the making or giving any undue or unreasonable preference or advantage to any particular person or locality, does not define what, under that section, shall constitute a preferenece or advantage to be undue and unreasonable, and as the fourth section, which forbids the charging or receiving greater compensation in the aggregate for the transportation of like kinds of property for a shorter than for a longer distance over the same line, under substantially similar circumstances and conditions, does not define or describe in what the similarity or dissimilarity of circumstances and conditions shall consist, it can not be doubted that whether in particular instances there has been an undue or unreasonable prejudice or preference, or whether the circumstances and conditions of the carriage have been substantially similar or otherwise, are questions of fact depending on the matters proved in each case.”
From this it would appear that the Supreme Court of the United States did not find anything more specific in the phrase contained in the fourth section than in the phrase contained in the third section with reference to whether competition should be considered as a factor which would justify discrimination, in rates.
The English courts under a statute precisely like our Section 23, forbidding railroad companies from giving any undue or unreasonable preference or advantage to, or in favor of any person or company, or any particular description of traffic in any respect whatsoever, have held that competition between rival lines is a fact to be considered, and that a preference or advantage resulting from such competition is not necessarily undue or unreasonable, and these cases are cited at page 164 in the opinion in support of the conclusion reached by the court in the case last cited.
But it is said that Section 3373, Revised Statutes, must be read in connection with Section 23 of the Ohio Railroad Commission *274 Act. But -I do not sec how that in any way aids the contention of counsel for the railroad commission. In the first place, that section relates only to freight traffic. But in the second place, as I have already pointed out, it does not undertake to require uniformity in the rate of carriage even of freight traffic, but only that a greater sum shall not be charged for carriage of any particular kind of freight for a given distance on the line of a railroad and connecting lines than is charged for the sain<¿ kind of freight in the same direction for an equal or greater distance, If it had any application to passenger rates it would only forbid the Hocking Yalley Railway Company from charging the residents of Logan and Lancaster and vicinity a greater sum for transportation to and from the city of Columbus than it charges the residents of Athens and vicinity and the complaint would come naturally under that section from the residents of Logan and Lancaster and vicinity and not from the residents of Athens and vicinity.
The decisions of the Illinois Supreme Court are not authority under our statute for the 'reason that the statute of that state provides—
“It shall not be deemed a sufficient excuse or justification of such discriminations on the part of such railroad corporation that the railway station or .point at which it shall charge, collect or receive the same or less rates of toll or compensation for the greater distance than for the shorter distance is a railroad station or point at which there'exists competition with any other railroad or means of transportation.”
These decisions are made under a statute which precludes the consideration of competition in the determination of the question. We have no such statutory provision.
We come then to a consideration of the question upon the facts admitted and proven. Is the discrimination undue and unreasonable? It appears from the evidence that the Hocking Yalley Railway Company has been operating its road for nearly thirty years. The Scioto Yalley Traction Company began to operate its line in the summer of 1904. At that time the rate of fare upon. Ohio railroads was three cents per mile. The rate fixed by the Scioto Yalley Traction Company was about two *275 cents per mile. The fare by the electric line between Columbus and Lancaster was fixed it appears at $1 for the round trip. The rate then in effect upon the Iloeldng Valley Railway was $1.70 per round trip between Columbus and Lancaster. The fare between Columbus and Logan on the Hocking Valley was $2.70 per round trip. In February, 1905, the Iiocking Valley Railway reduced its round trip fare between Columbus and Lancaster to $1 for the round trip, being the same fare charged upon the electric line. The fare to Logan was reduced to $1.60 for the round trip about the month of May, 1905. It also appears that the rate for a round trip between Columbus and Lancaster was reduced by the plaintiff to 75 cents about the month of May, 1905, at which point it has remained up to the present time, or, in other words, the plaintiff has made no change in its rates since about the month of May, 1905, or about two years ago.
As to the effect of this competition on the local passenger business of the Hocking Valley Railway Company between this city and Lancaster, the general passenger agent testifies that the present#earnings are about 25 per cent, of what they were before the competition existed. He also testifies that, although the rate for a round trip ticket between this city and Lancaster was reduced from $1, the fare charged by the electric line, to 75 cents, that this condition still continues, and that the greater part of the local passenger traffic between this city and Lancaster is carried by the electric line. It thus appears that notwithstanding its reduction in the fare and thé selling of what is known as the “twin ticket,” the Hocking Valley Railway has only been able to obtain about 25 per cent, of the passenger business between this city and Lancaster. There are of course obvious reasons for this. Some of these, which suggest themselves, are the frequency of the service upon the electric line, the fact that the cars run directly into the business and residence sections of the town of Lancaster, the novelty of a new mode of travel, etc.
The railroad commission held, as I understand, that competition could not be considered in determining whether the rate was or was not reasonable; but, notwithstanding, they held only *276 that the rate between Columbus and Lancaster was unreasonable in so far as it exceeded the rate charged by the electric line. If the conclusion at which the commission arrived was correct, then its order it would seem should have been the same as to fares charged between Columbus and Lancaster as to those charged between Columbus and Logan.
If the right of the Hocking Valley Railway Company to meet the competition of the electric line be conceded, and the commission does seem to concede it, then it seems to me that there is no warrant of law for holding that it is acting unreasonably when it only takes those steps which are found to be necessary on its part to regain a reasonable share of the passenger traffic which it before enjoyed, -even if it finds it necessary to counter-balance the superior advantages offered by the electric line by a rate somewhat below that charged by the electric line.
The commission finds in its report that this “twin ticket” device was adopted by the Hocking Valley Railway, not for the purpose of meeting competition, but to.destroy competition. T do not think the evidence offered before the commission, or upon this hearing, which is had upon the evidence taken before the commission as well as the additional evidence offered upon the hearing on appeal, warrants this conclusion. It appears that the rate fixed by the Hocking Valley Railway Company has been maintained without change for about two j^ears, although during all of that time, according to the evidence of the general passenger agent, which is not controverted, its receipts from the local passenger traffic between this city and Lancaster have only been about twenty-five per cent, of what they were before the competition arose. This does not seem to me to indicate any purpose on the part of the Hocking Valley Railway Company to destroy its competitor. On the contrary, it seems to me to indicate only a reasonable effort on its part to obtain some share in the local passenger traffic along its line between this city and Lancaster.
The commission says in its report:
“The steam road might, if permitted, sacrifice its passenger business between the competing points in order to destroy its competitor. ’ ’
*277 But this case is-not to be decided by supposing a ease which does not exist. Each case as it arises, as was said by the Supreme Court of the United States, must be decided upon the facts proven or admitted in that case. AVhen a case is made against the plaintiff in this case (such as that supposed) there will be no difficulty in dealing with it under the law which requires that discrimination shall be reasonable.
In the case of Louisville & N. Ry. v. Behlmer, 175 U. S., 648, it appears that the rate alleged to be an unjust discrimination in favor of Charleston and against Summersville, on the same line 19 cents per hundred to Charleston although the lowest competitive rate claimed to justify this rate was 23 cents per hundred from Louisville, Evansville, and Cairo, showing that this rate was justified although somewhat lower than the lowest rate alleged to have caused it.
The commission found that the Hocking Yalley Railway Company had no right to make reduction in the rate between Logan and Columbus because the line of the electric railway company terminates at Lancaster. It appears from the evidence that the village of Logan is about 18 miles south of Lancaster. The evidence in the ease shows that upon the opening of the electric line for travel persons taking passage at Logan upon the line of the Hocking Yalley Railway Company, would purchase a ticket to Lancaster, leave the ILoeking Yalley train at that point, and take passage upon the electric line for the remainder of the trip to Columbus and return, and it was to meet this condition that the steam road found it necessary to offer some inducement to those taking passage at Logan to continue upon its trains to and from the city of Columbus. If the right to meet competition be admitted then it seems to me the right must exist to meet it wherever it exercises a potent influence within reasonable limits. It does not appear that the electric railway competition did exercise a potential influence as far south as Logan, and in my opinion the ITocking Yalley Railway Company had a right, within reasonable limits, to meet this potential influence by making a reasonable reduction in its rates for the purpose of inducing those who took passage upon its trains at Logan to continue upon its trains to and from the city of Columbus, and *278 I do not see that the reduction in the rate made at that point, which is considerably less than that made at Lancaster, is unreasonable. If the right to meet competition be admitted at all it seems to me that the only logical conclusion is, that that right exists wherever the competition exercises an influence to deprive the competing party of that which both seek within reasonable limits.
G. O. Ilunler and F. Wilson, for plaintiff.
Wade II. Ellis, Attorney-General, contra,
The statute, Section 16 (R. S., 244-26), authorizes an appeal to this court from orders made by the commission by parties who are dissatisfied with the order of the commission. It is also provided that upon the hearing, if the court finds that evidence has been offered different from that offered xxpon the hearing before the commission or additional thereto, that the court shall before proceeding to render judgment, unless the parties stipulate in writing to the contrary, transmit a copy of such evidence to the commission, and stay further proceedings for fifteen days, etc. The parties in this case have stipulated in writing that the court shall proceed to render judgment without first transmitting a copy of the evidence to’ the railroad commission.
The statute also provides:
“In all actions under this section the burden of proof shall be upon the plaintiff to show by clear and satisfactory evidence that the order of the commission complained of is unlawful, or unreasonable, as the ease may be.”
The evidence is not as to material facts in conflict. And the questions presented for determination are in the main questions of law. Upon the evidence offered the court fiuds that the order of the railroad commission, in requiring the plaintiff to cease giving these rates to passengers upon its line between the said points, is unreasonable and 'unlawful, and adjudges that such order should be vacated and set aside.