### D.H. OVERMYER TELECASTING CO., INC., et al., Defendants.

### No. 82–3598.

United States Court of Appeals, Sixth Circuit.

Feb. 7, 1983.

Morton S. Robson, Robson & Miller, New York City, Douglas G. Cole, Strauss, Troy & Ruehlmann Co., LPA, Cincinnati, Ohio, for appellants.

William F. Eggeling, Ropes & Gray, Boston, Mass., Joseph Tatchan, Susan Collins, Baker & Hostetler, Cleveland, Ohio, for National Bank of Boston.

### ORDER

Before LIVELY, BOYCE F. MARTIN and KRUPANSKY, Circuit Judges.

The court has for consideration petitions for mandamus and prohibition against Bankruptcy Judge John F. Ray, Jr. of the Northern District of Ohio filed by the petitioners. On October 1, 1982 Judge Gilbert S. Merritt of this court ordered the intervenor in Chapter 11 bankruptcy proceedings in the Northern District of Ohio, First National Bank of Boston, to brief the issues of the personal jurisdiction and alleged due process violations raised by the petitioners in their application for a stay in this court. Thereafter the intervenor First National Bank of Boston filed its brief and the petitioners filed a response thereto.

Upon consideration of the petition, the brief and the response thereto and other papers filed in connection therewith the court concludes that the issues raised herein, though important, are not of such magnitude as to justify granting the extraordinary relief of mandamus or prohibition. These issues can be reached by appeal, and mandamus or prohibition should never be used as a substitute for appeal.

The petitions for mandamus and prohibition and the motion for stay of the orders of the Bankruptcy Court are all denied.

### John DEMJANJUK, Petitioner-Appellant,

v.

### Joseph PETROVSKY, et al., Respondents-Appellees.

### No. 85–3435.

United States Court of Appeals, Sixth Circuit.

Argued July 8, 1985.

Decided Oct. 31, 1985.

Mark O'Connor (argued), Buffalo, N.Y., John J. Gill, David C. Eisler, Cleveland, Ohio, for petitioner-appellant.

Patrick F. McLaughlin, Asst. U.S. Atty., Gary D. Arbeznik, Cleveland, Ohio, Alvin D. Lodish (argued), Murray R. Stein (argued), Office of Intern. Affairs, Washington, D.C., for respondents-appellees.

Before: LIVELY, Chief Judge, KEITH and MERRITT, Circuit Judges.

LIVELY, Chief Judge.

This international extradition case is before the court on appeal from the denial of a petition for a writ of habeas corpus, 612 F.Supp 571.

## I.

The petitioner, John Demjanjuk, is a native of the Ukraine, one of the republics of the Soviet Union. Demjanjuk was admitted to the United States in 1952 under the Displaced Persons Act of 1948 and became a naturalized United States citizen in 1958. He has resided in the Cleveland, Ohio area since his arrival in this country.

In 1981 the United States District Court for the Northern District of Ohio revoked Demjanjuk's certificate of naturalization and vacated the order admitting him to United States citizenship. See *United States v. Demjanjuk,* 518 F.Supp. 1362 (N.D.Ohio 1981), *aff'd per curiam,* 680 F.2d 32 (1982), *cert. denied,* 459 U.S. 1036, 103 S.Ct. 447, 74 L.Ed.2d 602 (1982). Chief Judge Battisti of the district court entered extensive findings of fact from which he concluded that the certificate and order "were illegally procured and were procured by willful misrepresentation of material facts under 8 U.S.C. § 1451(a)." 518 F.Supp. at 1386.

The district court found that Demjanjuk was conscripted into the Soviet Army in 1940 and was captured by the Germans in 1942. After short stays in several German POW camps and a probable tour at the Trawniki SS training camp in Poland, Demjanjuk became a guard at the Treblinka concentration camp, also in Poland, late in 1942. In his various applications for immigration to the United States the petitioner misstated his place of residence during the period 1937–1948 and did not reveal that he had worked for the SS at Treblinka or served in a German military unit later in the war. In the denaturalization proceedings Demjanjuk admitted that his statements concerning residence were false and that he had in fact served in a German military unit. He steadfastly denied that he had been at Trawniki or Treblinka, though documentary evidence placed him at Trawniki and five Treblinka survivors and one former German guard at the camp identified Demjanjuk as a Ukrainian guard who was known as "Ivan or Iwan Grozny," that is, "Ivan the Terrible."

Following the denaturalization order the government began deportation proceedings against Demjanjuk. While these proceedings were underway the State of Israel filed with the United States Department of State a request for the extradition of Demjanjuk. The United States Attorney for the Northern District of Ohio, acting on behalf of the State of Israel, filed a complaint in the district court seeking the arrest of Demjanjuk and a hearing on the extradition request. Following a hearing the district court entered an order certifying to the Secretary of State that Demjanjuk was subject to extradition at the request of the State of Israel pursuant to a treaty on extradition between the United States and Israel signed December 10, 1962, effective December 5, 1963. Bond previously granted Demjanjuk was revoked and he was

committed to the custody of the Attorney General of the United States pending the issuance of a warrant of surrender by the Secretary of State.

## II.

### A.

■ There is no direct appeal from an order certifying extradition, and the only method of review is by collateral habeas corpus proceedings. *Collins v. Miller*, 252 U.S. 364, 369, 40 S.Ct. 347, 349, 64 L.Ed. 616 (1920); *Caplan v. Vokes*, 649 F.2d 1336, 1340 (9th Cir.1981). The scope of review in habeas corpus following an extradition order is quite narrow. After differentiating between the requirements of probable cause and proof beyond a reasonable doubt, Justice Holmes delineated the scope of review as follows in *Fernandez v. Phillips*, 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925):

> The foregoing are general principles relating to extradition, but there are further limits to *habeas corpus*. That writ as has been said very often cannot take the place of a writ of error. It is not a means for rehearing what the magistrate already has decided. The alleged fugitive from justice has had his hearing and *habeas corpus* is available only to inquire whether the magistrate had jurisdiction, whether the offence charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty. *Benson v. McMahon*, 127 U.S. 457, 8 S.Ct. 1240, 32 L.Ed. 234. *Re Luis Oteiza y Cortes*, 136 U.S. 330, 10 S.Ct. 1031, 34 L.Ed. 464. *Bryant v. United States*, 167 U.S. 104, 105, 17 S.Ct. 744, 745, 42 L.Ed. 94. *Elias v. Ramirez*, 215 U.S. 398, 406, 30 S.Ct. 131, 134, 54 L.Ed. 253.

Though Demjanjuk acknowledges these limitations on the scope of appeal, he presents a somewhat confusing melange of arguments. We will attempt to deal with them separately.

### B.

[2] Before reaching the more technical arguments related to jurisdiction of the district court and the question of whether the crimes charged were within the treaty provisions, we deal with the sufficiency of the evidence. As noted, there was sworn testimony by affidavits from six witnesses who were at Treblinka in 1942 and 1943 who identified Demjanjuk. These witnesses stated that Demjanjuk was a guard who herded prisoners into the gas chambers and then actually operated the mechanism which filled the chambers with gas. In addition, several of the witnesses testified that they saw Demjanjuk beat and maim prisoners, some of whom died. Justice Holmes wrote in *Fernandez* that our task is to determine "whether there was *any* evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Id.* (emphasis added). Surely the evidence in this case satisfied this lenient standard.

■ This court does not sit to rehear the district court's findings. *Escobedo v. United States*, 623 F.2d 1098, 1101 (5th Cir.1980). The evidence which the district court relied upon was properly authenticated by an official of the U.S. Department of State as required by 18 U.S.C. § 3190. If properly authenticated, evidence may be received in an extradition case which could not have been received at a preliminary examination under state law. *Collins v. Loisel*, 259 U.S. 309, 313, 42 S.Ct. 469, 471, 66 L.Ed. 956 (1922). Thus it is immaterial that Demjanjuk had no opportunity to cross examine the affiants. The only evidentiary function of the extradition court is to determine whether there is sufficient evidence to justify holding a person for trial in another place. We are satisfied that the district court relied upon admissible evidence in making its determination in this case.

As noted earlier, Demjanjuk was identified by documentary evidence as having been at the SS training camp, Trawniki Exhibits 5 and 6 were the front and back of a German document which identified "Iwan

Demjanjuk" as a guard in an SS unit. The heading showed that it was issued at Trawniki. On appeal Demjanjuk argues strenuously that the Trawniki documents were forged and that the government perpetrated a fraud upon the court by introducing them. This same argument was made in the denaturalization proceedings. The district court discussed this issue at some length in its opinion in those proceedings, and rejected Demjanjuk's contentions. 518 F.Supp. at 1365–69. This issue was also addressed by the district court in denying post-judgment motions for relief.

In making these arguments as to the authenticity of the Trawniki documents, Demjanjuk overlooks one very important fact. The district court in the extradition proceedings made a specific finding that the other evidence identifying Demjanjuk as the guard "Ivan" at Treblinka was sufficient to support the extradition order without reference to the Trawniki document. Thus, even if this documentary evidence had been rejected, the eyewitness evidence alone was found sufficient. Since the district court did not rely on the "Trawniki card," its validity is not before the court. Of course, if we found any support in the record for the claim that the government deliberately offered a forged document as evidence, we would examine the entire proceedings for other evidence of fraud. However, the record before us lends no support to this very serious charge, and we reject it. Witnesses fully qualified to testify on the subject stated their opinions that the Trawniki documents were authentic.

### C.

One other issue raised by Demjanjuk requires consideration. On appeal Demjanjuk argues that Judge Battisti, having presided at the denaturalization proceedings, should have recused himself from the extradition hearing. In making this contention Demjanjuk relies on 28 U.S.C. § 455(a) which requires a judge to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." The argument is that Judge Battisti, having found that Demjanjuk committed acts which required his denaturalization, might reasonably be considered biased against the same party in a subsequent extradition action. The problem with this argument is that in order to be disqualifying, a judge's alleged bias must emanate from some "extrajudicial source" rather than from participation in judicial proceedings. *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966).

Recusal is not required of a judge assigned to consider a habeas corpus action following conviction at a trial over which the judge presided. In fact Rule 4(a) of the rules applicable to actions seeking habeas relief from a federal conviction pursuant to 28 U.S.C. § 2255 requires the petition to be presented to the judge who presided over the petitioner's trial or sentencing. While the present action was brought under a different habeas corpus statute, 28 U.S.C. § 2241, the reasons for the rule apply equally to both. Judicial economy is served by requiring a judge familiar with the case to consider collateral attacks on the judgment. In the absence of some evidence of actual bias or prejudice from some source other than his prior judicial contact with a related case, § 455(a) does not require a judge to disqualify himself in extradition proceedings. *David v. Attorney General*, 699 F.2d 411, 416 (7th Cir.), cert. denied, 464 U.S. 832, 104 S.Ct. 113, 78 L.Ed.2d 114 (1983). We find no evidence of actual bias in this case.

Under a local rule of the Northern District of Ohio Demjanjuk's habeas corpus action was assigned to Chief Judge Battisti. The district court entered a memorandum and order in which it dealt with each of the habeas corpus claims and concluded that Demjanjuk was not being held in violation of the Constitution, treaties or laws of the United States. The effect of the certification to the Secretary of State was stayed and Demjanjuk appealed to this court.

## III.

### A.

The pertinent portions of the treaty (Convention on Extradition) between the United States and Israel (hereafter the Treaty) found in the first three articles and the thirteenth article, are set forth:

### Article I

Each Contracting Party agrees, under the conditions and circumstances established by the present Convention, reciprocally to deliver up persons found in its territory who have been charged with or convicted of any of the offenses mentioned in Article II of the present Convention committed within the territorial jurisdiction of the other, or outside thereof under the conditions specified in Article III of the present Convention.

### Article II

Persons shall be delivered up according to the provisions of the present Convention for prosecution when they have been charged with, or to undergo sentence when they have been convicted of, any of the following offenses:

1. Murder.
2. Manslaughter.
3. Malicious wounding; inflicting grievous bodily harm.

\*  \*  \*  \*  \*  \*

### Article III

When the offense has been committed outside the territorial jurisdiction of the requesting Party, extradition need not be granted unless the laws of the requested Party provide for the punishment of such an offense committed in similar circumstances.

The words "territorial jurisdiction" as used in this Article and in Article I of the present Convention mean: territory, including territorial waters, and the airspace thereover belonging to or under the control of one of the Contracting Parties, and vessels and aircraft belonging to one of the Contracting Parties or to a citizen or corporation thereof when such vessel is on the high seas or such aircraft is over the high seas.

\*  \*  \*  \*  \*  \*

### Article XIII

A person extradited under the present Convention shall not be detained, tried or punished in the territory of the requesting Party for any offense other than that for which extradition has been granted nor be extradited by that Party to a third State unless:

(Exceptions not applicable).

The Israeli warrant on which the extradition request was based was issued pursuant to a request which charged Demjanjuk with having "murdered tens of thousands of Jews and non-Jews" while operating the gas chambers to exterminate prisoners at Treblinka. It further asserts that the acts charged were committed "with the intention of destroying the Jewish people and to commit crimes against humanity." The complaint in the district court equated this charge with the crimes of "murder and malicious wounding [and] inflicting grievous bodily harm," listed in the Treaty. The warrant was issued pursuant to a 1950 Israeli statute, the Nazis and Nazi Collaborators (Punishment) Law. This statute made certain acts, including "crimes against the Jewish people," "crimes against humanity" and "war crimes committed during the Nazi period" punishable under Israeli law. The statute defines these crimes as follows:

"crime against the Jewish people" means any of the following acts, committed with intent to destroy the Jewish people in whole or in part:

1. killing Jews;
2. causing serious bodily or mental harm to Jews;
3. placing Jews in living conditions calculated to bring about their physical destruction;
4. imposing measures intended to prevent births among Jews;
5. forcibly transferring Jewish children to another national or religious group;

6. destroying or desecrating Jewish religious or cultural assets or values;

7. inciting to hatred of Jews;

"crime against humanity" means any of the following acts:

murder, extermination, enslavement, starvation or deportation and other inhumane acts committed against any civilian population, and persecution on national, racial, religious or political grounds;

"war crime" means any of the following acts:

murder, ill-treatment or deportation to forced labour or for any other purpose, of civilian population of or in occupied territory; murder or ill-treatment of prisoners of war or persons on the seas; killing of hostages; plunder of public or private property; wanton destruction of cities, towns or villages; and devastation not justified by military necessity.

### B.

Demjanjuk contends that the district court had no jurisdiction to consider the request for extradition. He advances several discrete arguments in support of this position. As he did in the district court, Demjanjuk maintains that the crime he is charged with is not included in the listing of offenses in the treaty. It is his position that "murdering thousands of Jews and non-Jews" is not covered by the treaty designation of "murder." It is a fundamental requirement for international extradition that the crime for which extradition is sought be one provided for by the treaty between the requesting and the requested nation. 18 U.S.C. § 3184; *Fernandez v. Phillips*, 268 U.S. at 312, 45 S.Ct. at 542. We have no difficulty concluding that "murder" includes the mass murder of Jews. This is a logical reading of the treaty language and is the interpretation given the treaty by the Department of State. That interpretation is entitled to considerable deference, as this court noted in *Argento v. Horn*, 241 F.2d 258, 263 (6th Cir.1957):

A construction of a treaty by the political department of the government, while not conclusive upon a court called upon to construe such a treaty in a matter involving personal rights, is nevertheless of much weight. [Quoting *Charlton v. Kelly*, 229 U.S. 447, 468, 33 S.Ct. 945, 952, 57 L.Ed. 1274 (1913).]

Demjanjuk also argues that the district court had no jurisdiction because there is a requirement of "double criminality" in international extradition cases. The Restatement of the Foreign Relations Law of the United States, Tentative Draft No. 5 (1984) (hereafter "Restatement"), provides in § 487:

(1) No person may be extradited pursuant to § 486 [The Basic Rule]

\* \* \* \* \* \*

(c) If the offense with which he is charged or of which he has been convicted is not punishable as a serious crime both in the requesting and in the requested state.

The Supreme Court stated in *Collins v. Loisel*, 259 U.S. 309, 311, 42 S.Ct. 469, 470, 66 L.Ed. 956 (1922), "It is true that an offense is extraditable only if the acts charged are criminal by the laws of both countries." See also *Brauch v. Raiche*, 618 F.2d 843, 847 (1st Cir.1980) ("The requirement that the acts alleged be criminal in both jurisdictions is central to extradition law...").

We believe the double criminality requirement was met in this case. As the Court stated in *Collins v. Loisel*:

The law does not require that the name by which the crime is described in the two countries shall be the same; nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the particular *act* charged is criminal in both jurisdictions.

259 U.S. at 312, 42 S.Ct. at 470 (Emphasis added). If the acts upon which the charges of the requesting country are based are also proscribed by a law of the requested nation, the requirement of double criminali-

ty is satisfied. Murder is a crime in every state of the United States. The fact that there is no separate offense of mass murder or murder of tens of thousands of Jews in this country is beside the point. The *act* of unlawfully killing one or more persons with the requisite malice is punishable as murder. That is the test. The acts charged are criminal both in Israel and throughout the United States, including Ohio. Demjanjuk's argument that to interpret murder to include murder of Jews would amount to judicial amendment of the Treaty is absurd and offensive.

## IV.

### A.

A separate jurisdictional argument concerns the territorial reach of the statutory law of Israel. Demjanjuk relies on two facts to question the power of the State of Israel to proceed against him. He is not a citizen or resident of Israel and the crimes with which he is charged allegedly were committed in Poland. He also points out that the acts which are the basis of the Israeli arrest warrant allegedly took place in 1942 or 1943, before the State of Israel came into existence. Thus, Demjanjuk maintains that the district court had no jurisdiction because Israel did not charge him with extraditable offenses.

The scope of this nation's international extradition power and the function of the federal courts in the extradition process are set forth in 18 U.S.C. § 3184:

§ 3184. **Fugitives from foreign country to United States**

Whenever there is a treaty or convention for extradition between the United States and any foreign government, any justice or judge of the United States, or any magistrate authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate, to the end that the evidence of criminality may be heard and considered. If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

Section 3184 clearly provides that the extradition complaint must charge the person sought to be extradited with having committed crimes "within the jurisdiction of any such foreign government," that is, the requesting state. This same condition is reflected in § 486(a) of the Restatement, which requires the requested state to comply with the request to arrest and deliver a person sought "on charges of having committed a serious crime within the jurisdiction of the requesting state." The question is whether the murder of Jews in a Nazi extermination camp in Poland during the 1939–1945 war can be considered, for purposes of extradition, crimes within the jurisdiction of the State of Israel.

### B.

We look first at the Treaty. Article III provides that when an offense has been committed outside the territorial jurisdiction of the requesting party, "extradition need not be granted unless the laws of the requested party provide for the punishment of such an offense committed in similar circumstances." Demjanjuk maintains that the "need not" language of Article III prohibits extradition in this case because the laws of the United States do not provide punishment for war crimes or crimes

against humanity. He places principal reliance on *Valentine v. United States ex rel. Neidecker,* 299 U.S. 5, 57 S.Ct. 100, 81 L.Ed. 5 (1936). In *Valentine* the treaty provided in part, "Neither of the contracting parties shall be bound to deliver up its own citizens or subjects under the stipulations of this convention." *Id.* at 7, 57 S.Ct. at 101. The Supreme Court concluded that this language did not grant discretion to the government to extradite citizens of the United States. Demjanjuk argues that the "need not ... unless" language in the Treaty presently before us similarly precludes an exercise of discretion to extradite for any offense for which the laws of the United States provide no punishment under similar circumstances.

Similar arguments were made by the petitioners in *In re Assarsson,* 635 F.2d 1237 (7th Cir.1980), *cert. denied,* 451 U.S. 938, 101 S.Ct. 2017, 68 L.Ed.2d 325 (1981), and *In re Assarsson,* 687 F.2d 1157 (8th Cir. 1982). These cases involved two brothers who were charged in Sweden with several crimes, including a scheme to defraud an insurance company by causing a warehouse in Copenhagen, Denmark to be burned. The extradition treaty between the United States and Sweden contained language identical to that in Article III of the United States-Israeli treaty. The Seventh Circuit construed "need not ... unless" to mean that the decision whether to extradite is discretionary where laws of the requested party do not provide punishment of the described offense under similar circumstances. The court effectively distinguished *Valentine* as dealing with an unusual treaty which when read in its entirety was logically found to prohibit the extradition of U.S. citizens rather than to grant discretion. 635 F.2d at 1245. The Eighth Circuit adopted the same construction in upholding the denial of habeas corpus relief to the second brother. 687 F.2d at 1163–64.

*Valentine* construed the treaty to grant no discretion because it was silent on this question whereas many other treaties explicitly granted discretion. "[T]he fact that our Government had favored extradition treaties without excepting citizens puts the omission of the qualifying grant of discretionary power in a strong light." 299 U.S. at 13, 57 S.Ct. at 104. No comparison with other existing treaties requires this strict reading of the Treaty in the present case.

■ We agree with the two courts which have construed the language which is common to the treaties with Sweden and Israel. In our view the treaty language makes two things clear: (1) the parties recognize the right to request extradition for extra-territorial crimes, and (2) the requested party has the discretion to deny extradition if its laws do not provide for punishment of offenses committed under similar circumstances. This provision does not affect the authority of a court to certify extraditability; it merely distinguishes between cases where the requested party is required to honor a request and those where it has discretion to deny a request. That the specific offense charged is not a crime in the United States does not necessarily rule out extradition.

■ The Israeli statute under which Demjanjuk was charged deals with "crimes against the Jewish people," "crimes against humanity" and "war crimes" committed during the Nazi years. It is clear from the language defining the crimes, and other references to acts directed at persecuted persons and committed in places of confinement, that Israel intended to punish under this law those involved in carrying out Hitler's "final solution." This was made explicit in the prosecution of Adolph Eichmann in 1961. *Attorney General v. Eichmann,* 36 I.L.R. 277 (Sup.Ct.Israel 1962), reprinted in 2 Friedman, *The Law of War* at 1657–1687 (1972). Such a claim of extraterritorial jurisdiction over criminal offenses is not unique to Israel. For example, statutes of the United States provide for punishment in domestic district courts for murder or manslaughter committed within the maritime jurisdiction (18 U.S.C. § 1111) and murder or manslaughter of internationally protected persons wherever they are killed (18 U.S.C. § 1116(c)). We

conclude that the reference in 18 U.S.C. § 3184 to crimes committed within the jurisdiction of the requesting government does not refer solely to territorial jurisdiction. Rather, it refers to the authority of a nation to apply its laws to particular conduct. In international law this is referred to as "jurisdiction to prescribe." Restatement § 401(1).

### C.

The law of the United States includes international law. *The Paquete Habana,* 175 U.S. 667, 712 (1900). International law recognizes a "universal jurisdiction" over certain offenses. Section 404 of the Restatement defines universal jurisdiction:

§ 404: **Universal Jurisdiction to Define and Punish Selected Offenses**

A state may exercise jurisdiction to define and punish certain offenses recognized by the community of nations as of universal concern, such as piracy, slave trade, attacks on or hijacking of aircraft, genocide, war crimes, and perhaps terrorism, even where none of the bases of jurisdiction indicated in § 402 is present.

This "universality principle" is based on the assumption that some crimes are so universally condemned that the perpetrators are the enemies of all people. Therefore, any nation which has custody of the perpetrators may punish them according to its law applicable to such offenses. This principle is a departure from the general rule that "the character of an act as lawful or unlawful must be determined wholly by the law of the country where the act is done." *American Banana Co. v. United Fruit Co.,* 213 U.S. 347, 356, 29 S.Ct. 511, 512, 53 L.Ed. 826 (1909).

The wartime allies created the International Military Tribunal which tried major Nazi officials at Nuremberg and courts within the four occupation zones of post-war Germany which tried lesser Nazis. All were tried for committing war crimes, and it is generally agreed that the establishment of these tribunals and their proceedings were based on universal jurisdiction.

*E.g.* Sponsler, *The Universality Principle of Jurisdiction and the Threatened Trials of American Airmen,* 15 Loy.L.Rev. 43, 48–51 (1968–69).

Demjanjuk argues that the post-war trials were all based on the military defeat of Germany and that with the disestablishment of the special tribunals there are no courts with jurisdiction over alleged war crimes. This argument overlooks the fact that the post-war tribunals were not military courts, though their presence in Germany was made possible by the military defeat of that country. These tribunals did not operate within the limits of traditional military courts. They claimed and exercised a much broader jurisdiction which necessarily derived from the universality principle. Whatever doubts existed prior to 1945 have been erased by the general recognition since that time that there is a jurisdiction over some types of crimes which extends beyond the territorial limits of any nation.

Turning again to the Restatement, § 443 appears to apply to the present case:

§ 443. **Jurisdiction to Adjudicate in Aid of Universal and Other Non-Territorial Crimes.**

A state's courts may exercise jurisdiction to enforce the state's criminal laws which punish universal crimes (§ 404) or other non-territorial offenses within the state's jurisdiction to prescribe (§§ 402–403).

Israel is seeking to enforce its criminal law for the punishment of Nazis and Nazi collaborators for crimes universally recognized and condemned by the community of nations. The fact that Demjanjuk is charged with committing these acts in Poland does not deprive Israel of authority to bring him to trial.

Further, the fact that the State of Israel was not in existence when Demjanjuk allegedly committed the offenses is no bar to Israel's exercising jurisdiction under the universality principle. When proceeding on that jurisdictional premise, neither the nationality of the accused or the victim(s), nor

the location of the crime is significant. The underlying assumption is that the crimes are offenses against the law of nations or against humanity and that the prosecuting nation is acting for all nations. This being so, Israel or any other nation, regardless of its status in 1942 or 1943, may undertake to vindicate the interest of all nations by seeking to punish the perpetrators of such crimes.

### D.

We conclude that the jurisdictional challenges to the district court's order must fail. The crime of murder is clearly included in the offenses for which extradition is to be granted under the treaty. Murder is a crime both in Israel and in the United States and is included in the specifications of the Nazis and Nazi Collaborators (Punishment) Law; the requirement of "double criminality" is met; and, the State of Israel has jurisdiction to punish for war crimes and crimes against humanity committed outside of its geographic boundaries.

Though it was not explicitly argued, we have considered whether recognition of the power of Israeli courts to punish for war crimes committed outside of its national territory violates any right of Demjanjuk under the Constitution of the United States. Demjanjuk had notice before he applied for residence or citizenship in the United States that this country, by participating in post-war trials of German and Japanese war criminals, recognized the universality principle. Israel has chosen to proceed under that principle, and we do not supervise the conduct of another judicial system. To do so "would directly conflict with the principle of comity upon which extradition is based." *Jhirad v. Ferrandina*, 536 F.2d 478, 485 (2d Cir.), *cert. denied*, 429 U.S. 833, 97 S.Ct. 97, 50 L.Ed.2d 98 (1976). In the absence of any showing that Demjanjuk will be subjected to procedures "antipathetic to a federal court's sense of decency," *Gallina v. Fraser*, 278 F.2d 77, 79 (2d Cir.), *cert. denied*, 364 U.S. 851, 81 S.Ct. 97, 5 L.Ed.2d 74 (1960), this court will not inquire into the procedures which will apply after he is surrendered to Israel. There is absolutely no showing in this record that Israel will follow procedures which would shock this court's "sense of decency." *United States ex rel. Bloomfield v. Gengler*, 507 F.2d 925, 928 (2d Cir.1974).

### V.

The remaining inquiry relates to how the "principle of specialty" applies to this case. This principle requires that the requesting country not prosecute for crimes listed in the treaty but for which extradition was not granted. *Shapiro v. Ferrandina*, 478 F.2d 894, 905 (2d Cir.), *cert. dismissed*, 414 U.S. 884, 94 S.Ct. 204, 38 L.Ed.2d 133 (1973). It is also a condition found in Article XIII of the Treaty, which provides that a person extradited thereunder shall not be tried or punished by the requesting party "for any offense other than that for which extradition has been granted."

The district court clearly certified that Demjanjuk was subject to extradition solely on the charge of murder. Though some of the acts which Demjanjuk is charged with may also constitute other offenses listed in the treaty, he may be tried in Israel only on that charge. However, the particular acts of murder for which he may be tried depend upon Israeli law. Israel may try him under the provisions of the Nazis and Nazi Collaborators (Punishment) Law for "crimes against the Jewish people" ("killing Jews," a species of murder), "crimes against humanity" ("murder ... of civilian population") and "war crimes" ("murder ... of civilian population of or in occupied territory"). The principle of specialty does not impose any limitation on the particulars of the charge so long as it encompasses only the offense for which extradition was granted.

We have discussed the principle of specialty because it was argued by Demjanjuk and we have attempted to deal with every issue raised. However, we feel constrained to note that there is a serious

question whether Demjanjuk has standing to assert the principle of specialty. The right to insist on application of the principle of specialty belongs to the requested state, not to the individual whose extradition is requested. *Berenguer v. Vance,* 473 F.Supp. 1195, 1197 (D.D.C.1979). See also *Shapiro v. Ferrandina,* 478 F.2d at 906, where the court recognizes this rule of international law while proceeding in a habeas appeal to remedy the failure of the magistrate to separate extraditable and non-extraditable offenses.

## CONCLUSION

The district court did not err in denying Demjanjuk's petition for a writ of habeas corpus. Under established principles of international law the request by the State of Israel for extradition of Demjanjuk was within the provisions of the Treaty. The district court also correctly determined that it had jurisdiction of the matter and that the evidence presented was sufficient to sustain the charge as required by 18 U.S.C. § 3184. The district court properly certified to the Secretary of State that Demjanjuk is subject to extradition to Israel.

Neither the district court nor this court is empowered to order the extradition of any person. Extradition is an act of the Executive Branch. "The ultimate decision to extradite is a matter within the exclusive prerogative of the Executive in the exercise of its powers to conduct foreign affairs." *Escabedo v. United States,* 623 F.2d at 1105 (citations omitted). A decision to attach conditions to an order of extradition is within the discretion of the Secretary of State, not the courts.

The judgment of the district court is affirmed.