Yechiel HEILBRONN, Petitioner,

v.

John KENDALL, Respondent.

No. 1:91–CV–428.

United States District Court,
W.D. Michigan, S.D.

June 5, 1991.

---

Douglas F. Curtis, David F. DuMouchel, Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., Nathan Lewin, Miller, Cassidy, Larroca & Lewin, Washington, D.C., Robert F. Mirque, Mirque, Seys & Zoet, Grand Rapids, Mich., for petitioner.

Donald A. Davis, Asst. U.S. Atty., John A. Smietanka, U.S. Atty., for respondent.

## OPINION

ROBERT HOLMES BELL, District Judge.

This matter is before the court on a petition for habeas corpus filed by Dr. Yechiel Heilbronn, pursuant to 28 U.S.C. § 2241. Petitioner is challenging the certification of extraditability issued by Magistrate Judge Hugh W. Brenneman, Jr. on May 9, 1991.

### I.

Petitioner is an Israeli citizen and a permanent resident of the United States. During 1986 and 1987, petitioner served as director of the department of neuro-surgery at the Beilinson Hospital, a teaching hospital, in Petah Tikva, Israel. As director of the department petitioner had the authority to designate which doctor would perform operations and the order of operations.

Beilinson Hospital is a Kupat Holim Clalit (General Sick Fund) Hospital, part of a complex socialized health-care network. The Kupat Holim Clalit is an affiliate of the General Labor Federation (Histadrut) and is the largest of the four health funds in Israel, serving over 75% of the population. Funding for this and the three other major sick funds is derived primarily from membership fees, employer fees, and government funding. The Kupat Holim Clalit is heavily subsidized and regulated by the government.

Petitioner was arrested on June 12, 1988, in Israel, on charges of bribery and fraud in violation of Israel's Penal Law Sections 290 and 415. He posted bond and was granted permission to leave the country for purposes of attending medical conferences. Trial was scheduled for November 28, 1989, in Israel, but petitioner failed to appear. On September 6, 1990, a warrant was issued for his arrest. On or about December 17, 1990, the State of Israel formally requested the extradition of the petitioner. Counts 1–10 and Count 12 of the indictment allege that relatives of patients made payments to petitioner in order to secure him to perform surgery on members of the Sick Fund who were entitled to free treatment at the Hospital. Counts 8 and 9 allege that petitioner accepted money on the promise that he would personally perform the surgery when in fact he did not.

The State of Israel requested the extradition of Yechiel Heilbronn from the United States to stand trial in Israel on 11 counts of bribery, an offense pursuant to § 290 of the Penal Law, and 2 counts of fraud under aggravated circumstances, an offense pursuant to § 415 of the Penal Law. The request was based upon the Convention on Extradition between the Government of the United States of America and the Government of the State of Israel, signed at Washington, December 10, 1962, entered into force December 5, 1963. T.I.A.S. 5476, 14 U.S.T. 1717 (the "Convention").

The United States, acting on behalf of the Government of the State of Israel, filed a complaint for the extradition of Yechiel Heilbronn in this Court. Pursuant to the requirements of 18 U.S.C. § 3184, an extradition hearing was held before Magistrate Judge Hugh W. Brenneman, Jr. on March 27, 1991. On May 9, 1991, the Magistrate issued a certification of extraditability, certifying the extradition as to the bribery charges in Counts 1–10, and the fraud charge in Count 8. The Magistrate found no probable cause to certify the fraud

charge in Count 9 or the bribery charge in Count 12.

## II.

■ Because certification of extraditability is not a final order, there is no direct appeal from an order certifying extradition. The only method of review is by collateral habeas corpus proceedings. 18 U.S.C. § 3184; 28 U.S.C.A. § 2241; *Demjanjuk v. Petrovsky,* 776 F.2d 571 (6th Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1198, 89 L.Ed.2d 312 (1986); *Koskotas v. Roche,* 931 F.2d 169 (1st Cir.1991); *Ahmad v. Wigen,* 910 F.2d 1063, 1065 (2nd Cir.1990). Habeas corpus is not a writ of error, and it is not a means of rehearing what the certification judge or magistrate already has decided. *Fernandez v. Phillips,* 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925); *Ahmad,* 910 F.2d at 1066; *In re Extradition of Manzi,* 888 F.2d 204, 205 (1st Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1321, 108 L.Ed.2d 496 (1990).

The scope of habeas review of a magistrate's international extradition order is narrow, being limited to the following inquiry:

1. whether the magistrate had jurisdiction;

2. whether the offense charged is within the treaty; and

3. whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty.

*Demjanjuk,* 776 F.2d at 576; *Fernandez v. Phillips,* 268 U.S. at 312, 45 S.Ct. at 542.

In this case petitioner argues that the offenses charged were not extraditable offenses within the terms of the Convention, that the acts constituting the offenses charged are not criminal offenses under the laws of the United States, that there was not sufficient evidence to justify his committal for trial within the meaning of 18 U.S.C. § 3184 and Article V of the Convention, and that extradition has been requested on charges for which he has not been indicted by Israel.

## A. *Extraditable Crime*

■ The question whether an offense comes within the extradition treaty involves two determinations. The first is whether the offense is an extraditable crime. "It is a fundamental requirement of international extradition that the crime for which extradition is sought be one provided for by the treaty between the requesting and the requested nation." *Demjanjuk,* 776 F.2d at 579. The second determination is whether the conduct is illegal in both countries. These are purely legal questions that the habeas court may review de novo. *Quinn v. Robinson,* 783 F.2d 776 (9th Cir.1986), *cert. denied,* 479 U.S. 882, 107 S.Ct. 271, 93 L.Ed.2d 247 (1986).

Petitioner is charged with 11 counts of bribery, a crime enumerated as an extraditable offense in Article II, section 15 of the Convention.

Petitioner contends the offenses described in the indictment are not within the scope of the term "bribery" as that term was understood when the Convention was signed. Bribery has historically been understood as a corrupt payment to a public official to influence the performance of an official act as evidenced by 18 U.S.C. § 201(c). Petitioner contends that because he was not a public official, because surgery is not an "official act", and because the alleged acts did not "corrupt" a regulatory decision, the offense charged does not fall within the terms of the Convention.

The Convention itself does not define "bribery" and does not limit it to public officials. It is well-settled law that extradition treaties should not be given a narrow or restricted interpretation. Rather, treaty obligations should be liberally construed in favor of extraditability. *Factor v. Laubenheimer,* 290 U.S. 276, 293–94, 54 S.Ct. 191, 195–96, 78 L.Ed. 315 (1933).

Moreover, in his Declaration, James E. Baker, Attorney Adviser in the Office of the Legal Adviser for the Department of State, states that the offenses for which petitioner's extradition is sought are covered by Article II of the 1962 Extradition Convention between the United States and Israel.

■ The interpretation given a treaty by the Department of State is entitled to considerable deference. *Demjanjuk,* 776 F.2d at 579. While a construction of a treaty by the political department of the Government is not conclusive upon a court called upon to construe such a treaty, it is nevertheless given great weight. *Sumitomo Shoji America, Inc. v. Avagliano,* 457 U.S. 176, 184–85, 102 S.Ct. 2374, 2379–80, 72 L.Ed.2d 765 (1982); *Argento v. Horn,* 241 F.2d 258, 263 (6th Cir.1957), *cert. denied,* 355 U.S. 818, 78 S.Ct. 23, 2 L.Ed.2d 35 (1957) (quoting *Charlton v. Kelly,* 229 U.S. 447, 468, 33 S.Ct. 945, 952, 57 L.Ed. 1274 (1913)).

Finally, in this case the common meaning of the term "bribery" in the United States at the time the Convention was signed has already been addressed by the Supreme Court in *Perrin v. United States,* 444 U.S. 37, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979). In *Perrin* the Supreme Court considered whether commercial bribery of private employees prohibited by a state criminal statute constitutes bribery "in violation of the laws of the State in which committed" within the meaning of the federal Travel Act, 18 U.S.C. § 1952. *Id.* at 38, 100 S.Ct. at 312. Petitioner argued that Congress intended "bribery" to be confined to its common-law definition, i.e., bribery of a public official. *Id.* at 41, 100 S.Ct. at 313. The Court rejected this narrow interpretation of bribery:

> In this country, by the time the Travel Act was enacted in 1961, federal and state statutes had extended the term bribery well beyond its common-law meaning.

*Id.* at 43, 100 S.Ct. at 314. The Court enumerated a number of federal and state statutes specifically using "bribery" in the sense of payments to private persons to influence their actions. *Id.* at 43–44, 100 S.Ct. at 314–315.

> In sum, by 1961 the common understanding and meaning of "bribery" had extended beyond its early common-law definitions. In 42 states and in federal legislation, "bribery" included the brib-ery of individuals acting in a private capacity.

*Id.* at 45, 100 S.Ct. at 315 (citation omitted).

■ Petitioner contends that *Perrin* is not conclusive on the issues in this case because the *Perrin* Court merely defined "bribery" under state and federal law and did not purport to define "bribery" under the Convention. While admittedly not conclusive, the *Perrin* Court's determination that the common understanding and meaning of the term "bribery" by 1961 included the bribery of individuals acting in a private capacity is certainly persuasive of what the government agency charged with the negotiation and enforcement of the Convention had in mind when it used the term "bribery".

The Court is satisfied that the term "bribery" as used in the Convention was not limited to bribery of public officials and that the charges against the petitioner come within the scope of extraditable offenses.

## B. *Double Criminality*

Petitioner's second contention is that extradition on the offenses charged would violate the principle of double criminality. Petitioner has been charged with multiple violations of § 290 of the Israeli Penal Law, which provides as follows:

> (a) A public servant who takes a bribe for an act connected with his functions is liable to imprisonment for seven years or to imprisonment for seven years and a fine of 10,000 pounds.
>
> (b) In this section, "public servant" includes an employee of a body corporate providing a service to the public.

■ For purposes of determining double criminality the Court must look to proscription by similar criminal provisions of federal law or, if none, the law of the place where the petitioner is found or, if none, the law of the preponderance of the states. *Theron v. United States Marshal,* 832 F.2d 492, 496 (9th Cir.1987) *cert. denied,* 486 U.S. 1059, 108 S.Ct. 2830, 100 L.Ed.2d 930 (1988); *Brauch v. Raiche,* 618 F.2d 843, 851 (1st Cir.1980).

■ It is undisputed that bribery is illegal under the laws of the United States. Petitioner's argument, however, is that his case is peculiar because the particular conduct he is charged with would not be a crime in the United States where brain surgeons may charge "whatever fee the market will bear". (Heilbronn Memorandum, p. 24). The conduct is criminal in Israel only because of a "unique economic structure that turns doctors into public servants and condemns payments to them for services they are not required by law to perform." (Heilbronn Memorandum, p. 3).

In *Collins v. Loisel*, 259 U.S. 309, 42 S.Ct. 469, 66 L.Ed. 956 (1922), the United States Supreme Court called for a broad interpretation of the requirement of dual criminality:

> The law does not require that the name by which the crime is described in the two countries shall be the same, nor that the scope of the liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the particular act charged is criminal in both jurisdictions.

*Id.* at 312, 42 S.Ct. at 470.

> If the acts upon which the charges of the requesting country are based are also proscribed by a law of the requested nation, the requirement of double criminality is satisfied.

*Demjanjuk*, 776 F.2d at 579–80. The fact that a particular act is classified differently or that different requirements of proof are applicable in the two countries does not defeat extradition. *United States v. Levy*, 905 F.2d 326, 328 (10th Cir.1990) *cert. denied,* —— U.S. ——, 111 S.Ct. 759, 112 L.Ed.2d 778 (1991).

The bribery offense charge is comparable to 18 U.S.C. § 666 which makes it a crime for an employee of an organization receiving annual federal assistance in excess of $10,000 to accept a bribe. It is also comparable to 42 U.S.C. § 1320a–7b which makes it a crime for anyone to accept a bribe for arranging or ordering services paid for by Medicare.

It is not necessary that the two statutes be perfectly congruous. *United States v.*

*Sensi,* 879 F.2d 888, 894 (D.C.Cir.1989). Double criminality exists if the "essential character" of the acts criminalized by the laws of each country are the same and if the laws are "substantially analogous." *Theron,* 832 F.2d at 496; *Oen Yin–Choy v. Robinson,* 858 F.2d 1400, 1405 (9th Cir. 1988) *cert. denied,* 490 U.S. 1106, 109 S.Ct. 3157, 104 L.Ed.2d 1020 (1989); *In re Extradition of Tang Yee–Chun,* 674 F.Supp. 1058, 1067 (S.D.N.Y.1987). Statutes are substantially analogous when they "punish conduct falling within the broad scope" of the same "generally recognized crime". *Peters v. Egnor,* 888 F.2d 713, 719 (10th Cir.1989) (quoting *Brauch,* 618 F.2d at 848 n. 7, 852). The dual criminality requirement is satisfied if "[t]he substantive conduct each statute punishes is functionally identical." *Emami v. United States District Court,* 834 F.2d 1444, 1450 (9th Cir. 1987).

The crime charged in this case grows out of Israel's system of socialized medicine. Because the United States does not have a system of socialized medicine, petitioner contends that an equivalent crime under United States law cannot be found.

A similar argument based on the peculiarities of a country's laws or economic system was rejected in *Brauch.* The appellant in *Brauch* argued that although the English currency charges were denominated violations of that country's theft act, they rested solely on alleged violations of the Exchange Control Act, which was enacted to further monetary policies peculiar to Great Britain and had no analogue in American law. 618 F.2d at 853. Appellant argued that but for Great Britain's unique system of exchange controls, he would have been "a shrewd business man". *Id.* The court rejected his argument. The Court focused instead on the significant common element of deception in the two theft statutes being compared:

> We do not think that the double criminality requirement extends so far as to require that the reason particular conduct constitutes deception be some substantive law common to both jurisdictions.

*Id.*

The same holds true in the instant case. The common element of bribery, the cor-

rupt giving or receiving of payments to influence a duty owed, is common under both § 290 of the Israeli Penal Law and 18 U.S.C. § 666 and 42 U.S.C. § 1320a–7b. The statutes are substantially analogous. Double criminality does not require that the reason petitioner's conduct constitutes bribery (i.e., violation of the laws associated with a system of socialized medicine), be common to both jurisdictions.

## C. *Probable Cause*

■ Petitioner claims there is no probable cause to sustain the bribery charges because there is no evidence of corruption, an essential element of the charge of bribery. He claims that the allegations provide only that he received a payment for his skill, not for his position or influence.

The Court's limited review of the probable cause determination is "whether there is *any* evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Koskotas*, 931 F.2d at 176 (emphasis added); *Manzi*, 888 F.2d at 205; *Cheng Na–Yuet v. Hueston*, 734 F.Supp. 988, 997 (S.D.Fla.1990), *aff'd*, 932 F.2d 977 (11th Cir.1991).

The indictment charges that petitioner misused his authority. Contrary to petitioner's assertions, this legal conclusion is not the only evidence of corruption. In addition to the allegation of misuse of authority, the Israeli government has provided the affidavits of those who paid petitioner in order to insure that he would conduct the surgery on their relatives. The extradition materials also include the affidavit of Dr. Einan who testified that petitioner, as director of the neurosurgery department, had the ability to determine who would perform operations and the order in which operations would be performed. Dr. Einan testified in his affidavit that petitioner showed a special attitude toward some patients that was out of proportion to their medical condition and that there were rumors that those patients had paid petitioner. He testified that on two occasions petitioner's patients' surgeries were curiously scheduled before others with greater medical emergencies. He also testified that although petitioner routinely did only the most difficult surgeries, there were occasions when he did surgeries that other doctors could have easily performed.

Taken together, these affidavits constitute sufficient evidence to warrant a finding of probable cause that petitioner misused his authority by accepting money in exchange for the assignment or scheduling of cases not on the basis of medical necessity, but upon considerations of private gain to himself.

Petitioner also claims there is not probable cause to support the fraud charge in Count 8 because there is no proof that Dr. Heilbronn did not actually "perform" the operation as that term is medically understood, or that he did not intend personally to perform the operation.

The fraud charge in Count 8 is supported by the affidavits of Dr. Einan and Janet Karkukli. Janet Karkukli testified that in return for petitioner's word that he would be the one to operate on her husband, petitioner asked her to donate a photocopier. She further testified that after the operation petitioner told her that he had removed the growth and in subsequent conversations represented himself as the one who had performed the operation. Dr. Einan testified in his affidavit that in the medical records concerning the operation of Mr. Karkukli, Dr. Einan appears as the surgeon and Dr. Povzner as the assistant surgeon. "Dr. Heilbronn did not physically take part in the operation at all."

Under the liberal standard applied to the probable cause determination, the Court is satisfied that there is some evidence warranting the magistrate's finding that there was a reasonable ground to believe the petitioner is guilty of fraud as charged in Count 8.

## D. *Aggravated Fraud*

■ Petitioner claims in ¶ 6 of his petition that his extradition has been requested on the basis of a charge of fraud under aggravating circumstances, a charge for which he has not been indicted by the State of Israel.

Section 415 of the Israeli Penal Law provides:

A person who obtains a thing by deceit is liable to imprisonment for three years; if the offence is committed under aggravating circumstances, he is liable to imprisonment for five years.

The arrest warrant as translated merely describes the offense as "Obtaining thing by deceit, Penal Law Section 415". However, the affidavit of Irit Kohn, an attorney working in the Department of International Affairs of the Israeli Ministry of Justice, provides that petitioner was charged in Israel with fraud under aggravating circumstances.

The Convention does not differentiate between degrees of fraud. Article II, § 14 of the Convention specifies the following as an extraditable offense: "Obtaining money, valuable securities or goods by false pretenses or by threats or force." Fraud is an extraditable offense, whether aggravated or not.

Moreover, the Court believes that there is sufficient evidence that petitioner has been charged with aggravated fraud. Irit Kohn, of the Israeli Ministry of Justice, testified in his affidavit that there is no statutory definition of "aggravating circumstances", and that this factor is determined by the court in each case, upon consideration of such factors as the nature of the crime, the amount involved, the planning or calculation involved, the number of victims of the crime, and the number of individuals involved in the commission of the crime.

The Seventh Charge of the charge sheet, or indictment, provides in paragraph 8 that petitioner "took advantage of the distress of another person and obtained something to which he was not lawfully entitled." While this Court is not expected to become an expert in the laws of foreign nations, *Peters*, 888 F.2d at 716, the Court is satisfied that this charge of taking advantage of the vulnerable position of patients, is sufficient to constitute a charge of fraud under aggravating circumstances.

### III.

For the foregoing reasons, the petition for habeas corpus must be denied.